[Cite as *State ex rel. Koepf v. Indus. Comm.*, 2019-Ohio-3789.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Linda M. Koepf, | : | |
| Relator, | : | |
| v. | : | No. 18AP-753 |
| Industrial Commission of Ohio, et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on September 19, 2019

**On brief:** *Plevin & Gallucci Co., L.P.A., Frank L. Gallucci, III,* and *Bradley Elzeer, II; Paul W. Flowers Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

**On brief:** *Frantz Ward LLP, Maris J. McNamara,* and *Angela D. Lydon,* for respondent Union Oil Company of California.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Linda M. Koepf, brings this original action seeking a writ of mandamus to order respondent the Industrial Commission of Ohio (the "commission") to vacate its order denying her motion for accrued benefits for her husband's total loss of use of his arms, legs, vision in both eyes, and hearing in both ears and issue an order finding the award is appropriate.

{¶ 2} This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the

action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto.  The magistrate determined that the commission did not abuse its discretion in denying relator's request for loss of use and has recommended that this court deny the request for a writ of mandamus.

{¶ 3}  Relator has filed objections to the magistrate's decision.  Through these objections, relator contends that (1) the magistrate applied the wrong standard of statutory analysis by engrafting a survival requirement into R.C. 4123.57 in direct contravention of the applicable case law; (2) the magistrate improperly credited the opinion of Thomas E. Lieser, M.D., when it was not competent and reliable evidence; and (3) the magistrate should have accepted the report of Donato Borrillo, M.D., as establishing total loss of use.

{¶ 4}  Because relator has filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.* 11 Ohio St.2d 141, 164 (1967).

{¶ 5}  "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record."  *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  The court will not disturb the commission's decision if there is "some evidence" to support it.  *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 10th Dist. No. 14AP-632, 2016-Ohio-83, ¶ 6.  " 'Where a commission order is adequately explained and based on some evidence[,] * * * the order will not be disturbed as manifesting an abuse of discretion.' "  *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997).  Thus, as long as some evidence supports the commission's decision, this court must defer to the commission.

{¶ 6}  R.C. 4123.57(B) provides for compensation to a claimant for the total loss of a body part.  The claimant bears the burden of proving entitlement to compensation.  *State*

*ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 57 (1998). To qualify for compensation under R.C. 4123.57(B), "a claimant must demonstrate with medical evidence a total loss of use of the body part at issue for all practical purposes." *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

{¶ 7} The claimant also bears the burden of showing the loss of use is permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547, ¶ 6. Finally, the burden is on the claimant to show that a causal relationship exists between the allowed occupational injury/disease and the alleged loss of use. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 454 (1993), citing *Fox v. Indus. Comm.*, 162 Ohio St. 569 (1955), paragraph one of the syllabus.

{¶ 8} Here, the magistrate properly determined that because there is some evidence in the record to support the commission's denial of relator's application for a total loss of use award, she is not entitled to mandamus relief. Specifically, both the magistrate and the staff hearing officer ("SHO") in the proceedings below rightly found that relator failed to present medical evidence demonstrating that, for all intents and purposes, decedent had lost the use of his legs and arms and had lost his hearing and vision. Furthermore, the magistrate correctly identified decedent's medical records—including the hospice records—as being "some evidence" upon which the commission properly relied in denying relator's motion for loss of use compensation. The record clearly shows the SHO considered these records and concluded they did not support relator's claim for total loss of use. Indeed, the SHO provided a detailed explanation for his reasoning behind this conclusion. Thus, even without the report of Dr. Lieser, we agree with the magistrate's finding that there was "some evidence" to support the commission's denial of relator's claim.

{¶ 9} Moreover, the report of Dr. Lieser is also "some evidence" upon which the commission properly relied. The commission found the opinion of Dr. Lieser to be persuasive. Furthermore, the SHO provided a detailed discussion of the reasons that he found Dr. Lieser's opinion to be persuasive as well as the reasons that he rejected Dr. Borrillo's report. It is well-settled that the commission is the exclusive evaluator of weight and credibility. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000).

Therefore, not only was the magistrate not required to evaluate the propriety of the commission's finding that Dr. Lieser's report was persuasive, it would have been inappropriate for the magistrate to engage in such an analysis.

{¶ 10} Turning to relator's objections, we reject relator's argument that the magistrate applied the wrong standard of statutory analysis by engrafting a survival requirement into R.C. 4123.57 in direct violation of *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364. This argument mischaracterizes both the opinion in *Moorehead* and the magistrate's decision.

{¶ 11} In this case, the magistrate did not base her decision on "duration-of-survival" or "cognizance" requirements as would be prohibited by *Moorehead*. Rather, the magistrate properly determined that the SHO did not abuse his discretion when he concluded that the medical evidence did not establish that, had decedent been able to survive the mesothelioma, he would have suffered loss of use. In cases where the claimant has passed away, this court has repeatedly looked to whether the evidence supports that, but for the decedent's death, there was a loss of use that would have been permanent. *See, e.g., State ex rel. Sagraves v. Indus. Comm.*, 10th Dist. No. 10AP-1030, 2012-Ohio-1010; *see also State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547. This is the correct standard to apply when evaluating a claim under R.C. 4123.57(B) and the magistrate did not err in her analysis.

{¶ 12} Next, we find meritless relator's contention that the magistrate improperly credited the opinion of Dr. Lieser when it was not competent and reliable evidence. First, this argument wholly misapprehends the role of the magistrate and the court in this case, which is whether there is some evidence to support the denial of relator's application for an award based on total loss of use. As discussed previously, even without Dr. Lieser's report the medical records themselves are "some evidence" which properly support the commission's denial; therefore, the magistrate must defer to the commission's determination in any event.

{¶ 13} Moreover, contrary to the position of relator, the court does not find that Dr. Lieser's report is inherently unreliable merely because he did not consider all of the medical records from hospice. We further find that that the Supreme Court of Ohio's opinion in *State ex rel. Timmerman Truss, Inc. v. Indus. Comm.*, 102 Ohio St.3d 244,

2004-Ohio-2589 does not support relator's contention that Dr. Lieser's report must be rejected in its entirety for being ambiguous or equivocal. To the contrary, Dr. Lieser's report specifically addresses each body part at issue and unequivocally states that the allowed condition of malignant mesothelioma did not cause decedent to sustain a permanent and total loss of use of any of the requested body parts for all practical purposes. This is the correct legal standard as set forth in *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, and Dr. Lieser properly applied it.

{¶ 14} Finally, we reject relator's argument that the magistrate should have accepted the report of Dr. Borrillo as establishing that decedent had sustained a total loss of use of his eyes, ears, arms and legs. The commission "need only cite evidence in support of its decision, and the presence of contrary evidence is immaterial." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11. Because the medical records themselves and the report of Dr. Lieser each independently constitutes "some evidence" upon which the commission relied, this court must defer to the determination of the commission. Furthermore, the SHO expressly rejected Dr. Borrillo's report, finding it unpersuasive. As discussed previously, the commission is the exclusive evaluator of weight and credibility. *State ex rel. LTV Steel Co.* at 287. Therefore, the commission was free to find persuasive the report of Dr. Lieser and free to find unpersuasive the report of Dr. Borrillo. The commission's denial of the claim for total loss of use was based on some evidence, and the magistrate did not err by not accepting the report of Dr. Borrillo as establishing total loss of use.

{¶ 15} For all these reasons, we overrule relator's objections. Having conducted an examination of the magistrate's decision and an independent review of the evidence pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BRUNNER and NELSON, JJ., concur.

_____

## APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Linda M. Koepf, | : | |
| Relator, | : | |
| v. | : | No. 18AP-753 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 25, 2019

*Plevin & Gallucci Co., L.P.A., Frank L. Gallucci, III,* and *Bradley Elzeer, II; Paul W. Flowers Co., L.P.A., Paul W. Flowers,* and *Louis E. Grube,* for relator.

*Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Frantz Ward LLP, Maris J. McNamara,* and *Angela D. Lydon,* for respondent Union Oil Company of California.

IN MANDAMUS

{¶ 16} Relator, Linda M. Koepf, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her motion for accrued benefits for her husband's total loss of use of his arms, legs, vision in both eyes, and hearing, and ordering the commission to find that award is appropriate.

Findings of Fact:

{¶ 17} 1.  The decedent, Kyle Koepf, developed mesothelioma as a result of his employment with respondent Union Oil Company of California ("UNOCAL").

{¶ 18} 2.  Relator, decedent's spouse, filed a workers' compensation claim which was allowed for "death related to malignant mesothelioma-peritoneum."

{¶ 19} 3.  Decedent's date of death was March 30, 2014.

{¶ 20} 4.  On February 16, 2017, relator filed a motion requesting the payment for loss of use compensation pursuant to R.C. 4123.57for the decedent's total loss of use of both arms, total loss of use of both legs, total loss of vision in both eyes, and bilateral hearing loss.  In support of her motion, relator submitted the November 22, 2016 independent medical review of Donato Borrillo, M.D., who opined that decedent developed a functional loss of use of both eyes, both ears/hearing, bilateral upper extremities, and bilateral lower extremities prior to his death on March 30, 2014.

{¶ 21} 5.  Relator also submitted Hospice records detailing decedent's decline prior to his death.  For example, when he first arrived at Hospice, decedent was able to stand with the aid of a walker to use a bedside urinal; however, over time, decedent needed help to stand, and ultimately needed to use a bed pan as he could no longer get out of bed. Another example provides that initially, decedent was able to verbally communicate with Hospice nurses; however, over time he responded by blinking his eyes, and later did not respond at all.  Additionally, relator presented evidence that decedent's extremities ultimately became cold and discolored, and his pulse became weaker and weaker.

{¶ 22} 6.  Thomas E. Lieser, M.D., authored a report dated March 22, 2017.  Dr. Lieser was asked to review all the medical evidence, accept the allowed conditions and the objective findings, and offer his opinion on whether decedent suffered the total losses as asserted by relator.  Dr. Lieser ultimately concluded that the medical evidence did not support the findings of Dr. Borrillo.  Dr. Lieser stated:

> The medical documentation reveals the obvious findings of mesothelioma with multiple opinions that the claimant suffered from asbestos related mesothelioma from prior exposure to asbestos. The cause of death on the death certificate of mesothelioma provides no incite as to the claimant's functional use of his arms, legs, eyes, and ears prior to and leading up to his death on 03/30/2014. * * * No autopsy evidence is available regarding this claim. Nonetheless, at no

time did any of the treating physicians, specialists, surgeons, and other evaluators document any loss of function of the arms and legs that would constitute a total loss of use. At no time was any total loss of function of the ears, the hearing, the eyes and the vision documented. Unfortunately, Dr. Borrillo has provided no objective evidence in support of his opinion that Mr. Koepf had experienced total loss of use of his arms, total loss of use of his legs, total loss of vision, and total loss of hearing prior to death. On the contrary, the medical evidence would indicate that in fact Mr. Koepf retained total use of his eyes, his vision, his ears, his hearing, and total functional use of his arms and legs such that had he somehow survived the effects of the mesothelioma, he would have retained complete use of the arms, legs, vision and hearing.

As he progressively deteriorated he demonstrated use of his hearing and vision while responding to people. In summary, there is a complete absence of any objective evidence that Mr. Koepf suffered from total loss of function of the arms, the legs, his vision and hearing for any period of time prior to his death. There has been no specialist evaluation by an otolaryngologist to confirm total loss of use of hearing, nor has there been any specialist evaluation by an ophthalmologist to support total loss of use of vision.

\* \* \*

There is no objective evidence that the malignant mesothelioma from which the claimant died served to cause total permanent loss of use of the arms to such a degree that the affected body part was useless for all practical purposes. The medical evidence provides absolutely no objective findings that would support the permanent and total loss of use of the function of the arms prior to death. Had Mr. Koepf survived the mesothelioma, which caused his death on 03/30/2014, he would have retained complete and full use of his arms. There is no objective evidence to support anything to the contrary.

\* \* \*

Prior to the injured worker's death on 03/30/2014, the condition malignant mesothelioma did not cause the injured worker to sustain a total permanent loss of use of the legs to such a degree that the affected body part was useless for all practical purposes. There is no objective evidence that Mr. Koepf suffered from loss of use of the legs in relation to the

malignant mesothelioma which caused his death on 03/30/2014. There is no objective evidence of any impairment of the legs or the neurovascular structures that supply the legs that would have resulted in total loss of their use. To the contrary, the medical evidence reveals that had Mr. Koepf survived the mesothelioma and lived beyond the 03/30/2014 date of death, he would have in fact retained full, complete use of his lower extremities. There is no objective evidence to support the contrary.

* * *

Prior to the injured worker's death on 3/30/2014, the condition malignant mesothelioma did not cause the injured worker to sustain total permanent loss of vision to such a degree that the affected body part was useless for all practical purposes. There is absolutely no documentation of any objective medical evidence that supports loss of use of vision prior to death. There is no evidence of metastasis to the cranium that may have affected the eyes or the optic nerve transmitting signals from the eyes to the cerebral cortex nor any evidence of injury to the cerebral cortex itself in relation to the mesothelioma that would have caused total loss of use of his vision. There is absolutely no objective evidence that supports loss of vision suffered by Mr. Koepf prior to and leading up to his death on 03/30/2014 for any period of time. The objective evidence available indicates that had Mr. Koepf survived his mesothelioma and lived past the 03/30/2014 date of his death, he would have in fact retained full functional use of his vision. There is no objective evidence to support the contrary.

* * *

Prior to the injured worker's death on 03/30/2014, the condition of malignant mesothelioma did not cause the injured worker to sustain total permanent loss of hearing to such a degree that the affected body part was useless for all practical purposes. There is no objective evidence that the claimant sustained any impairment of his hearing especially in relation to the cause of his death, that being the malignant mesothelioma. There is absolutely no objective evidence that the claimant sustained any metastatic involvement or spread of the mesothelioma to the cranium affecting the ears or the acoustic nerve that transmits signals to the cortex, nor involvement of the cerebral cortex where hearing is processed. There is simply no objective evidence that Mr. Koepf suffered

from total loss of his capacity to hear as a result of the malignant mesothelioma during his waning days leading up to his death for any period of time. In summary, the objective medical evidence does not support loss of hearing. There is no objective evidence to support the contrary.

In conclusion, Dr. Lieser stated:

In summary, the opinion expressed by Dr. Borrillo that the claimant had suffered loss of use of the arms, the legs, the vision and the hearing prior to death is not supported by any of the medical evidence. Dr. Borrillo did not provide any objective evidence to support his opinion, rather the medical evidence does support that Mr. Koepf indeed retained the ability to functionally use his vision, his hearing, his arms and his legs prior to his death and at the time of his death.

{¶ 23} 7. Dr. Borrillo provided an addendum dated June 16, 2017. In that addendum, Dr. Borrillo indicated he had the opportunity to review decedent's records, that Hospice records showed decedent was no longer walking on his own power as a direct result of the allowed conditions, and that decedent's inability to walk was permanent and would have continued indefinitely had he survived the mesothelioma.

{¶ 24} 8. Relator's motion was heard before a district hearing officer ("DHO") on May 31, 2017. The DHO denied the requests in their entirety, stating:

The request for scheduled loss/loss of use of the right arm, left arm, right eye, left eye and bilateral hearing loss are denied, as there is no objective evidence of inability to use any of these body parts.

The request for scheduled loss of use of both legs is denied, as there was no evidence of actual permanent loss or loss of use of the legs due to the allowed conditions in this claim. Rather, Injured Worker's general physical condition weakened as his death approached, leading to an inability to walk. This is not found to be a permanent condition had he recovered.

This decision relies upon *State ex rel. Carter v. Indus. Comm. of Ohio* 2009WL3366373 and *State ex rel. Sagraves v. Indus. Comm.* 10AP—1030 and the report of Thomas Lieser, M.D., 03/22/2017.

{¶ 25} 9. Relator's appeal was heard before a staff hearing officer ("SHO") on July 19, 2017. The SHO affirmed the prior DHO order and denied the requests in their

entirety.  The SHO discussed the substance of Dr. Borrillo's report and found that it was

not persuasive.  Thereafter, the SHO discussed the Hospice records and the report of Dr.

Lieser, stating:

> This Staff Hearing Officer makes note of the fact that the documentation from Pro Medica Ebeid Hospice Residence of Sylvania Ohio does *not* indicate that the Deceased-Claimant, Kyle L. Koepf, had lost his sight or hearing. Quite the contrary, the Hospice records indicate that he carried on conversations with the various service providers and caregivers at the Hospice facility. He would wake up when they spoke his name and he would carry on a conversations with them every day until his death.
>
> Furthermore, the Hospice records indicate that, while the Deceased-Claimant did have edema in both his upper and lower extremities, he was able to use his hands and arms for the purpose of using the call light to call his caregivers. Furthermore, while those records indicate that the Injured Worker was a "fall risk," they do *not* indicate a "loss of use" of the legs for all intents and purposes. They merely indicate that the Deceased-Claimant was, "developing leg pain and, with his increased weakness, he has had more difficulty with mobility." The records merely indicate that, even with slight exertion, he was easily fatigued, but those records indicate that the fatigue was due to abnormal respiration, not loss of use of his legs.
>
> The case of *State ex rel. Moorehead v. Indus. Comm.* (2006), 112 Ohio St.3d 27, which was cited by the Injured Worker's legal counsel, involved a deceased worker who had fallen approximately 15-20 feet head first onto a concrete floor. Upon impact, he suffered severe spinal cord and other injuries. In that case it was undisputed that the *spinal cord injury rendered him to be a quadriplegic.* The only issue was whether or not he was entitled to an award for loss of use of the bilateral upper and lower extremities, since *he never gained consciousness.* The Supreme Court in the *Moorehead* case held that *consciousness of the loss* during extended period of survival *is not required* by R.C. Section 4123.57(B). However, in the instant claim, it is strongly disputed as to whether or not the Deceased-Claimant had "loss of use" for all practical intents and purposes prior to his death.
>
> It is the finding of this Staff Hearing Officer that the facts and circumstances of the instant claim are more appropriately analyzed under the reasoning of the Court of Appeals decision

in the case of *State ex rel. Sagraves v. Indus. Comm.*, Tenth Dist. No. 10AP-1030, 2012-Ohio-1010. In that case, the issue was "whether, and if so, for how long, Lowery may have survived the crash and whether he lost the use of his legs during that survival period." The Court of Appeals for the Tenth Appellate District held that Mr. Lowery's family did not present persuasive evidence that Lowery had survived the crash and, also, that Lowery's family did not present persuasive evidence that Lowery's injuries, even if survivable, would have caused the permanent loss of use of his legs.

Likewise, in the instant claim, *the persuasive evidence* indicates that the Widow-Claimant failed to meet her burden of proving that the Deceased-Claimant had a *permanent loss of use* of both arms, both legs, both eyes and both ears.

This Staff Hearing Officer finds the opinion of Thomas E. Lieser, M.D., as stated in his narrative report of 03/22/2017, be the most persuasive in regard to the issues presented by the Widow-Claimant's motion filed 02/16/2017.

Dr. Lieser made note of the fact that, "At no time did any of the treating physicians, specialists, surgeons, and other evaluators document any loss of function of the arms and legs that would constitute a total loss of use. At no time was any total loss of function of the ears, the hearing, the eyes and the vision documented." Furthermore, Dr. Lieser went on to state that, "Unfortunately, Dr. Borrillo has provided no objective evidence in support of his opinion that Mr. Koepf had experienced total loss of use of his arms, total loss of use of his legs, total loss of vision, and total loss of hearing prior to death. On the contrary, the medical evidence would indicate that, in fact, Mr. Koepf retained total use of his eyes, his vision, his ears, his hearing and total functional use of his arms and legs, such that he somehow survived the effects of the mesothelioma, he would have retained complete use of the arms, legs, vision and hearing." In further support of that opinion, Dr. Lieser stated that, in regard to the Deceased-Claimant, Kyle L. Koepf, "As he progressively deteriorated, he demonstrated use of hearing and vision, while responding to people. In summary, there is a complete absence of any objective evidence that Mr. Koepf suffered from total loss of function of the arms, the legs, his vision and hearing for any period of time prior to his death." Dr. Lieser than [sic] addressed each body part, separately, and stated that the condition of malignant mesothelioma did not cause the

> Injured Worker to sustain a loss of use of any of the requested body parts for all practical purposes.
>
> Therefore, it is the **order** of this Staff Hearing Officer that **the Widow-Claimant's C-86 motion, which requests an award for *loss of use* of both arms, both legs, both eyes, and both ears,** pursuant to R.C. Section 4123.57, **ishereby DENIED** in its entirety.

(Emphasis sic.)

{¶ 26} 10. Relator's appeal was denied by commission order mailed August 24, 2017.

{¶ 27} 11. Relator's request for reconsideration was denied by commission order mailed September 30, 2017.

{¶ 28} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 29} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 31} Relator argues the medical evidence clearly establishes the requested losses of use, that Dr. Lieser clearly did not consider all the medical records from Hospice, and that Dr. Lieser did not utilize the proper legal standard.

{¶ 32} For the reasons that follow, it is this magistrate's decision that the commission did not abuse its discretion here.

{¶ 33} In order to qualify for a loss of use award, relator was required to present medical evidence demonstrating that, for all intents and purposes, he had lost the use of his left upper extremity. *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166.

{¶ 34} In *Alcoa*, at ¶ 10, the court set forth the historical development of scheduled awards for loss of use under R.C. 4123.57(B) as follows:

> Scheduled awards pursuant to R.C. 4123.57(B) compensate for the "loss" of a body member and were originally confined to amputations, with the obvious exceptions of hearing and sight. In the 1970s, two cases—*State ex rel. Gassmann v. Indus. Comm.* (1975), 41 Ohio St.2d 64, 70 O.O.2d 157, 322 N.E.2d 660, and *State ex rel. Walker v. Indus. Comm.* (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190—construed "loss," as similarly used in R.C. 4123.58, to include loss of use without severance. *Gassmann* and *Walker* both involved paraplegics. In sustaining each of their scheduled loss awards, we reasoned that "[f]or all practical purposes, relator has lost his legs to the same effect and extent as if they had been amputated or otherwise physically removed." *Gassmann*, 41 Ohio St.2d at 67, 70 O.O.2d 157, 322 N.E.2d 660; *Walker*, 58 Ohio St.2d at 403-404, 12 O.O.3d 347, 390 N.E.2d 1190.

{¶ 35} In *Alcoa*, the claimant, Robert R. Cox, sustained a left arm amputation just below his elbow. Due to continuing hypersensitivity at the amputation site, Cox was prevented from ever wearing a prosthesis. Consequently, Cox filed a motion seeking a scheduled loss of use award for the loss of use of his left arm.

{¶ 36} Through videotape evidence, Alcoa established that Cox could use his remaining left arm to push open a car door and to tuck paper under his arm. In spite of this evidence, the commission granted Cox an award for the loss of use of his left arm.

{¶ 37} Alcoa filed a mandamus action which this court denied. Alcoa appealed as of right to the Supreme Court of Ohio.

{¶ 38} Affirming this court's judgment and upholding the commission's award, the

Supreme Court explained, at ¶ 10-15:

> Alcoa urges the most literal interpretation of this rationale and argues that because claimant's arm possesses some residual utility, the standard has not been met. The court of appeals, on the other hand, focused on the opening four words, "for all practical purposes." Using this interpretation, the court of appeals found that some evidence supported the commission's award and upheld it. For the reasons to follow, we affirm that judgment.

> Alcoa's interpretation is unworkable because it is impossible to satisfy. *Walker* and *Gassmann* are unequivocal in their desire to extend scheduled loss benefits beyond amputation, yet under Alcoa's interpretation, neither of those claimants would have prevailed. As the court of appeals observed, the ability to use lifeless legs as a lap upon which to rest a book is a function unavailable to one who has had both legs removed, and under an absolute equivalency standard would preclude an award. And this will always be the case in a nonseverance situation. If nothing else, the presence of an otherwise useless limb still acts as a counterweight—and hence an aid to balance—that an amputee lacks. Alcoa's interpretation would foreclose benefits to the claimant who can raise a mangled arm sufficiently to gesture or point. It would preclude an award to someone with the hand strength to hold a pack of cards or a can of soda, and it would bar—as here—scheduled loss compensation to one with a limb segment of sufficient length to push a car door or tuck a newspaper. Surely, this could not have been the intent of the General Assembly in promulgating R.C. 4123.57(B) or of *Gassmann* and *Walker.*

> Pennsylvania defines "loss of use" much as the court of appeals did in the present case, and the observations of its judiciary assist us here. In that state, a scheduled loss award requires the claimant to demonstrate either that the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. Discussing that standard, one court has written:

> "Generally, the 'all practical intents and purpose' test requires a more crippling injury than the 'industrial use' test in order to bring the case under section 306(c), supra. However, it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for

all practical intents and purposes." *Curran v. Walter E. Knipe & Sons, Inc.* (1958), 185 Pa.Super. 540, 547, 138 A.2d 251.

This approach is preferable to Alcoa's absolute equivalency standard. Having so concluded, we further find that some evidence indeed supports the commission's decision. Again, Dr. Perkins stated:

"It is my belief that given the claimant's residual hyper-sensitivity, pain, and tenderness about his left distal forearm, that he is unable to use his left upper limb at all and he should be awarded for the loss of use of the entire left upper limb given his symptoms. He has been given in the past loss of use of the hand, but really he is unable to use a prosthesis since he has had the amputation, so virtually he is without the use of his left upper limb."

{¶ 39} Relator points to this court's decision in *State ex rel. Arberia, LLC v. Indus. Comm.,* 10th Dist. No. 13AP-1024, 2014-Ohio-5351, specifically asserting the length of time one survives does not determine loss of use and that loss of use is not dependent on whether the decedent would have survived the injury.

{¶ 40} In *Arberia,* Doloreza Taluri died following a 30 foot fall while performing demolition work on a roof.  Taluri landed on his head.  Taluri's pupils were dilated, blood and brain matter were coming from his nose, and he suffered massive hemorrhages of his brain.  Although he initially survived the fall, Taluri died four hours later.

{¶ 41} Taluri's wife was awarded death benefits and later filed a motion asking for an award of loss of use of Taluri's arms, legs, eyes, and ears pursuant to R.C. 4123.57(B).  The medical evidence demonstrated that Taluri had not only suffered extensive injuries to his head and brain, but broke his neck in several places.  The medical evidence established the extent of his brain injury was such that he would have lost control of his arms and legs, and he would have had no residual functional capacity in his extremities had he survived the accident.  The medical evidence also established that Taluri's brain injury would have resulted in total and permanent loss of vision, which would have persisted even if he would have survived.  Finally, the medical evidence established the brain injury would have resulted in a total permanent loss of hearing and that his hearing organs would have been useless for all practical purposes, and that loss would have continued had he survived his injuries.

{¶ 42} The *Arberia* case is distinguishable from the present case. Taluri's brain and spinal cord injuries, in and of themselves, resulted in his total loss of use. Those injuries also resulted in his death. Further, the medical evidence demonstrated that, even if he had survived his injuries, Taluri would have suffered those losses.

{¶ 43} By comparison, here, suffering from mesothelioma did not cause decedent to suffer the loss of use of his extremities, his eyes, and his ears. As the Hospice records indicate, as decedent neared the hour of his death, he became less and less responsive to stimuli. However, the medical evidence did not establish that, had he been able to survive the mesothelioma, decedent would have suffered these losses.

{¶ 44} In other words, it was the process of dying that caused the loss. A loss that is suffered by every patient receiving palliative care in Hospice, and though a lamentable loss, there is no suggestion such loss is contemplated for compensation under R.C. 4123.57(B).

{¶ 45} Relator also argues the commission abused its discretion by relying on *State ex rel. Sagraves v. Indus. Comm.,* 10th Dist. No. 10AP-1030, 2012-Ohio-1010. Larry Lowery was killed while employed as a sanitation worker. While emptying a trash container into the rear of his truck, Lowery was struck by a Ford Ranger traveling at a high rate of speed. Ultimately, Lowery was declared dead at the scene.

{¶ 46} Sherry Sagraves, as the guardian of Lowery's two minor children, filed a motion seeking scheduled loss compensation for Lowery's alleged loss of use of both legs. In considering the issue, the commission had conflicting medical evidence before it. In denying the request, the commission relied on the medical report of Thomas E. Forte, D.O., who opined there was no evidence that Lowery would have had loss of use of both legs due to the injuries he sustained. Dr. Forte opined that his leg injuries could have been repaired orthopedically had he lived. As such, whether Lowery's death was instantaneous or not, there was insufficient proof that even if Lowery had survived for any period of time, he suffered the permanent loss of use of his legs.

{¶ 47} *Sagraves* is instructive. The commission found the medical evidence failed to establish that Lowery lost the use of his legs as a result of the injuries he sustained. In other words, the medical evidence was insufficient to show that, but for the fact that he died, Lowery would have lost the use of his legs as a result of the injuries he sustained.

The same is true here. But for the fact that decedent died as a result of mesothelioma, the medical evidence does not show that he would have suffered these losses.

{¶ 48} An occupational disease claim, such as this, is different from a spinal cord injury or major brain injury claim. In the former, if one survives, they do not suffer the losses of use. However, in the latter, if one survives, no matter how briefly, they do suffer the losses of use.

{¶ 49} Based on the foregoing, it is this magistrate's decision that the commission did not abuse its discretion when it denied relator's request for loss of use. R.C. 4123.57(B) simply is not intended to provide for compensation in circumstances such as this.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).