[Cite as *State ex rel. Moore v. Indus. Comm.*, 2023-Ohio-3075.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Tamara C. Moore, | : | |
| Relator, | : | |
| v. | : | No. 21AP-563 |
| The Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on August 31, 2023

**On brief:** *Steven G. Thomakos*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

**On brief:** *Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Edward D. Murray*, and *Amanda M. Connelly*, for respondent GMI Holdings, Inc.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Tamara C. Moore, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her request for permanent total disability ("PTD") compensation and to enter an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. In that decision, the magistrate recommended this court deny relator's request for a writ of mandamus.

**{¶ 3}** Relator has filed objections to the magistrate's decision, challenging several of the magistrate's findings of fact (i.e., findings of fact Nos. 1, 2, 4, 6, and 9), and further asserting the magistrate erred in his conclusions of law by failing to find the commission's basis for rejecting the reports of Douglas J. Pawlarczyk, Ph.D., and James M. Lyall, Ph.D., constituted an abuse of discretion.

**{¶ 4}** Relator first objects to the magistrate's finding of fact No. 1, asserting the magistrate "errs in failing to note the allowance of depression was made on March 27, 2020." (Relator's Obj.'s at 1.) Relator argues that, while her industrial injury occurred on November 26, 1991, depression was allowed on March 27, 2020.

**{¶ 5}** The magistrate, however, noted in finding of fact No. 1 that relator's claims "were allowed for the following conditions: right shoulder sprain, myoneural disorder of long thoracic nerve, joint derangement right shoulder, and depressive disorder." (Appended Mag.'s Decision at ¶ 18.) Thus, contrary to relator's contention, the magistrate referenced relator's psychological condition, i.e., "depressive disorder." Finding no error, we overrule relator's objection to finding of fact No. 1.

**{¶ 6}** Relator next objects to the magistrate's finding of fact No. 2, asserting the magistrate erred in "failing to recognize Relator was rejected on two occasions as 'medically unstable' for vocational rehabilitation." (Relator's Obj.'s at 1.) We note relator does not separately argue this objection in her brief.

**{¶ 7}** Relator's contention that the magistrate failed to recognize she was previously rejected for vocational rehabilitation is without merit. The magistrate's finding of fact No. 2 specifically notes: "Relator attempted to participate in rehabilitation, but on June 10, 1992, she was informed that she was not medically stable for participation in rehabilitation." (Appended Mag.'s Decision at ¶ 19.) Further, the magistrate's decision later noted relator "was referred to vocational rehabilitation in 1993." (Appended Mag.'s Decision at ¶ 38.) Finding no error, we overrule relator's objection to finding of fact No. 2.

**{¶ 8}** Relator next objects to the magistrate's findings of fact Nos. 4 and 6, concerning the magistrate's discussion of the reports of Drs. Lyall and Pawlarczyk. Specifically, relator argues the magistrate failed to "outline the various testing" the psychologists performed "in rendering their opinions." (Relator's Obj.'s at 1.)

{¶ 9} Relator cites no authority for the proposition that the magistrate was required to outline every psychological test performed, and we find this argument unpersuasive. Furthermore, the decision of the magistrate sets forth in detail the findings of Dr. Lyall's report of February 4, 2021, as well as the findings of Dr. Pawlarczyk's report of May 30, 2021. Relator's objections to findings of fact Nos. 4 and 6 is therefore overruled.

{¶ 10} Relator further objects to finding of fact No. 6, asserting the magistrate erred in neglecting to find the report of Dr. Pawlarczyk: (1) lists all the allowed conditions, including depressive disorder, (2) indicates relator "would have 'Markedly' reduced pace in work-like tasks," and (3) states "an anxiety [dis]order was noted from 8/26/2020 to 1/13/2021 and was 'indicated at this time.' " (Relator's Obj.'s at 2.)

{¶ 11} Notwithstanding relator's first assertion, the decision of the magistrate notes that Dr. Pawlarczyk's report found "claimant has reached [maximum medical improvement] for her allowed condition of depressive disorder." (Appended Mag.'s Decision at ¶ 23.) The magistrate also addressed the issue of reduced pace, finding the report of Dr. Pawlarczyk indicated "claimant demonstrated mild concentration problems and low energy level, which would reduce the pace of her work tasks and result in a noncompetitive level of efficiency in performing work." (Appended Mag.'s Decision at ¶ 23.) Finally, with respect to the issue of anxiety disorder, the magistrate cited the report of Dr. Pawlarczyk in which he observed "in pharmacological management notes[,] * * * Dr. [George] Moses indicates that claimant had been diagnosed with depressive disorder and unspecified anxiety disorder." (Appended Mag.'s Decision at ¶ 23.) Here, the magistrate's findings accurately reflect the report of Dr. Pawlarczyk, and we overrule relator's objections to finding of fact No. 6.

{¶ 12} Relator also objects to finding of fact No. 9, asserting it is inaccurate and/or incomplete. Relator argues the magistrate erred by "failing to find 'mild impairment' is specifically referenced by the [staff hearing officer] as to 'permanent partial impairment.' " (Relator's Obj.'s at 2.) Relator further argues the magistrate erred in excluding "what the SHO said versus his interpretation." (Relator's Obj.'s at 2.)

{¶ 13} Contrary to relator's contention, the magistrate addressed the issue of mild impairment, noting the staff hearing officer ("SHO") found "Dr. Pawlarczyk's May 30, 2021, report is not persuasive evidence upon which she can rely, because Dr. Pawlarczyk opined

that the injured worker would not be able to tolerate stress typically encountered as part of the normal work week but also opined that the allowed conditions result in only a mild impairment." (Appended Mag.'s Decision at ¶ 26.)   Nor do we find persuasive relator's assertion that the magistrate's finding of fact No. 9 confuses the SHO's findings with the magistrate's own interpretation; a review of that finding reflects the magistrate accurately summarized the findings of the commission, through its SHO, based on the SHO's PTD hearing and report.  Relator's objection to finding of fact No. 9 is overruled.

{¶ 14} Relator's final objection is to the magistrate's conclusions of law, asserting the magistrate erred in not finding the commission's basis for rejecting the May 30, 2021 medical report of Dr. Pawlarczyk, and the February 4, 2021 medical report of Dr. Lyall, constituted an abuse of discretion. Relator's objection challenges in general the magistrate's discussion of those reports, and relator disagrees with the SHO's determination that the reports contain internal inconsistencies and/or inaccurate factual information.   We conclude, however, the magistrate did not err in interpreting the reports of Drs. Lyall and Pawlarczyk, and in finding the commission could have properly rejected those reports.

{¶ 15} The stipulated record indicates, as found by the magistrate, that the commission considered both the physical and psychological conditions in the claim.  Here, the SHO found that neither the allowed physical and/or the allowed psychological conditions rendered relator permanently and totally disabled from all sustained remunerative employment.  The SHO relied on the report of Dr. Paul Scheatzle, who opined relator was capable of performing light-duty work.  The SHO also considered and discussed, but found unpersuasive, the reports of Drs. Pawlarczyk and Lyall.  The SHO further considered the non-medical factors.   Finally, the SHO found that relator, after being laid off in 2019 due to her employer's decision to move most of the workforce out of the country, refused participation in vocational rehabilitation.  Based on this court's review, we agree with the magistrate's determination there was some evidence upon which the commission could find relator was capable of sustained remunerative employment, and we will not reweigh the evidence presented to the commission.  Because relator has failed to show the commission abused its discretion in denying the application for PTD compensation, we overrule relator's objection to the magistrate's conclusions of law.

{¶ 16} Based on an independent review of the matter, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's objections, and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny relator's request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

JAMISON and BOGGS, JJ., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Tamara C. Moore, | : | |
| Relator, | : | |
| v. | : | No. 21AP-563 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 17, 2023

*Steven G. Thomakos,* for relator.

*Dave Yost,* Attorney General, and *Anna I. Isupova,* for respondent Industrial Commission of Ohio.

*Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Edward D. Murray,* and *Amanda M. Connelly*, for respondent GEMI Holdings, Inc.

IN MANDAMUS

{¶ 17} Relator, Tamara C. Moore ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied claimant's request for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 18}  1. On November 26, 1991, claimant sustained an industrial injury to her right shoulder when she was picking up a small motor while working for respondent Gemi Holdings, Inc. ("employer"). Her workers' compensation claims were allowed for the following conditions: right shoulder sprain, myoneural disorder of long thoracic nerve, joint derangement right shoulder, and depressive disorder. She received temporary total disability compensation. She never underwent any surgeries for her injury.

{¶ 19}  2. Relator attempted to participate in rehabilitation, but on June 10, 1992, she was informed that she was not medically stable for participation in rehabilitation, and her rehabilitation file was closed in January 1993. Without rehabilitation, she returned to restricted-duty work with the employer on February 1, 1993, and continued working there for approximately 28 years. However, she continued to have pain in her right shoulder and continued to receive medical treatment periodically.

{¶ 20}  3. On January 24, 2021, Timothy Lee Hirst, M.D., issued a report, in which he found the following: (1) claimant has a permanent and worsening series of conditions of the right shoulder; (2) any motion of the neck, thoracic area, lumbar sacral area, or left arm causes pain in the right shoulder; (3) the right shoulder impairs movement and mobility because of the pain; (4) claimant sleeps poorly with only one period of sleep and then the pain awakens her for the rest of the night, and she gets by with about four to five hours of sleep per night; (5) because of sleep deprivation, she is chronically tired and mentally clouded; (6) this is aggravated further by the medication that is required for her allowed conditions; (7) she spends about half of each day sitting or lying down caring for the shoulder pain; and (8) due to injuries in this claim, there is so little functional capacity and claimant is so affected by this condition and its required care, that there is no capacity for sustained remunerative employment.

{¶ 21}  4. On February 4, 2021, James M. Lyall, Ph.D., issued a report, in which he found the following: (1) claimant "worked about a year and a half at the Genie Garage Door Company before her industrial injury on November 26, 1991"; (2) claimant "was off work about a year and a half or two years before returning to work[,]" and then worked "light duty work for a number of years"; (3) when she was told she had to take up heavy-duty work again in August 2019, she was unable to continue and was laid off; (4) she states her

shoulder pain is constant and falls in a pain-range of 7 to 10; (5) she has developed a psychiatric condition to include major depressive disorder and has been under regular mental-health care since August 2020; (6) she is taking three different psychiatric medications and sees her psychiatrist regularly; (7) claimant's depressive symptoms are severe; (8) activities of daily living are moderate to severely impaired by the allowed psychological condition; (9) claimant leads a very inactive lifestyle, will sometimes skip bathing, is somewhat fearful of going into new social environments, and has significant loss of energy; (10) socialization skills appear to be severely impaired; (11) attention and concentration skills are moderately impaired; (12) adaptation and stress are severely impaired; (13) utilizing the AMA Guidelines for Impairment Due to Mental and Behavioral Disorders Second and Fifth Edition, claimant has moderate to severe impairment due to the allowed conditions of major depressive disorder; (14) individuals with this level of impairment are unable to engage in regular remunerative employment; and (15) clamant is permanently and totally disabled due exclusively to her allowed psychological condition.

{¶ 22} 5. Claimant was examined by Paul Scheatzle, D.O., at the request of the Bureau of Worker's Compensation ("BWC"), and on May 15, 2021, he issued a report, in which he found the following: (1) claimant has reached maximum medical improvement ("MMI"); (2) based upon the allowed physical conditions, claimant has combined whole-person impairments of 12 percent; (3) claimant has a loss of range of motion of the right shoulders and posterior winging of the right scapula; (4) claimant is unable to do overhead lifting with the right arm; (5) claimant is capable of light-duty work with no lifting above shoulder, climbing, or crawling; and (6) sitting, standing, and walking are not limited.

{¶ 23} 6. Claimant was examined by Douglas J. Pawlarczyk, Ph.D., at the request of the BWC, and on May 30, 2021, he issued a report, in which he found the following: (1) claimant has reached MMI for her allowed condition of depressive disorder; (2) in pharmacological management notes by George Moses, M.D., Dr. Moses indicates that claimant had been diagnosed with depressive disorder and unspecified anxiety disorder; (3) she continued to describe several symptoms of depression despite being prescribed medication to treat this condition; (4) claimant has a mild impairment corresponding to a 24 percent whole-person impairment due to the allowed psychological condition of depressive disorder; (5) claimant has significant social withdrawal, which would negatively

affect her ability to interact with coworkers and supervisors; (6) claimant was, at times, irritable and pessimistic, which would negatively impact her ability to relate to others in the work setting; (7) claimant noted a desire to avoid others; (8) claimant demonstrated mild concentration problems and low energy level, which would reduce the pace of her work tasks and result in a noncompetitive level of efficiency in performing work; (9) claimant reported long-term sleep problems, which contribute to her low energy; and (10) claimant would be unable to tolerate stress encountered at work, and she would withdraw from others and be unable to persist at work tasks; and (11) there is a potential for claimant to engage in some suicidal behavior.

{¶ 24} 7. On August 31, 2019, claimant was laid off due to the employer's relocation of the workforce to Mexico.

{¶ 25} 8. On February 16, 2021, claimant filed a request for PTD. She relied upon the January 24, 2021, report of Dr. Hirst, and the February 4, 2021, report of Dr. Lyall.

{¶ 26} 9. On July 28, 2021, a staff hearing officer ("SHO") held a hearing on claimant's application for PTD, and on September 24, 2021, the SHO denied the application for PTD, finding: (1) claimant was not rendered permanently and totally disabled from all sustained remunerative employment due to the allowed physical and/or psychological conditions; (2) claimant is capable of performing light-duty work; (3) claimant's layoff in August 2019 was not due to her industrial injury but because the employer moved its workforce to Mexico; (4) claimant was able to work for 28 years for the employer following the industrial injury; (5) if the employer had not moved the workforce to Mexico, claimant would have continued to work for the employer; (6) following her layoff, claimant did not seek vocational rehabilitation because she believed she could not handle it due to the time it takes for her to keep up with things; (7) pain and sleep are her biggest stressors; (8) claimant's lack of sleep has been a chronic problem for a number of years, but she was still capable of working despite this issue; (9) the SHO relies upon Dr. Scheatzle's May 15, 2021, report, in which he opined that the allowed physical conditions resulted in 12 percent permanent impairment to the whole body; claimant is capable of performing light work; claimant can sit, stand, walk, and lift with her right arm to shoulder height; and claimant cannot lift her right arm over her head and cannot climb or crawl; (10) claimant's current treatment consists of office visits one every three months with Dr. Nicholas Varrati and the

use of muscle relaxers, but she does not take any pain medications; (11) Dr. Pawlarczyk's May 30, 2021, report is not persuasive evidence upon which she can rely, because Dr. Pawlarczyk opined that the injured worker would not be able to tolerate stress typically encountered as part of the normal work week but also opined that the allowed conditions result in only a mild impairment; (12) claimant was capable of working light duty for 28 years following the industrial injury; (13) the SHO rejects Dr. Pawlarczyk's report because it is internally inconsistent as he opined that the depressive disorder results in a mild impairment but then opined that claimant is rendered incapable of performing any sustained remunerative employment due to the depressive disorder condition; (14) Dr. Pawlarczyk indicates in his report that claimant has been diagnosed with a depressive disorder and unspecified anxiety disorder per notes from her primary care physician, George Moses, M.D., but the claim is not allowed for an anxiety disorder condition; (15) Dr. Moses prescribes claimant Wellbutrin, Buspar, and Lexapro since 2020 to treat her depressive and anxiety symptoms; (16) claimant received mental health treatment in 2012 and attempted suicide by overdosing on Xanax medication in 2013, was psychiatrically hospitalized in 2013, had mental-health treatment prior to the allowance of the depressive disorder condition, and has had some chronic medical problems unrelated to her industrial injury; (17) the SHO rejects the February 24, 2021, report of Dr. Lyall, as he "incorrectly indicated that the Injured Worker had only worked for the Employer of record for one and [a] half years" instead of 29 years, and this fact is significant because the allowed depressive disordered did not impair claimant from performing light-duty work for 28 years following the industrial injury; (18) claimant last received TTD compensation on November 12, 2000, as she returned to work for her employer, which accommodated her physical restrictions; (19) claimant began receiving social security disability compensation on July 27, 2019; (20) claimant is 57 years old, she last worked when she was 55 years old, and her age is not a barrier for performing sustained remunerative employment; (21) claimant completed 12th grade; completed high school; can read, write, and perform basic math; attended a 15-month training program in medical billing in 2010; and discontinued college classes because she failed algebra; (22) claimant never pursued vocational rehabilitation in this claim; (23) claimant has a 29-year employment history in a light physical strength position; (24) claimant worked on her husband's dairy farm from the time of the industrial injury

until 1993 or 1994, until the farm was sold; (25) claimant worked on her husband's dairy farm fulltime from 1982 to 1991; (26) claimant's activities of daily living (letting the dogs out, washing dishes, watching television, feeding chickens, gathering eggs, cleaning, vacuuming, picking up, mopping, driving to the grocery store and doctor, doing laundry, mowing the lawn using a riding mower, and working in her small vegetable garden) are inconsistent with a finding that claimant is permanently and totally disabled; (27) despite claimant's testimony that she feels stressed and overwhelmed, claimant receives no psychotherapy because she does not believe it will help her, although she received psychotherapy six to eight months in 2008 or 2009; (28) claimant uses no pain medication for the allowed physical conditions; and (29) based upon the fact that clamant worked for the employer in a light-duty position for 28 years following the injury until she was laid off, that she refused participation in vocational rehabilitation, that she performs activities of daily living inconsistent with being unable to perform all sustained remunerative employment, that she refused psychotherapy treatment despite feeling stressed, and Dr. Scheatzle's report, the SHO does not find claimant is unable to perform any sustained remunerative employment due to the allowed conditions in the claim.

{¶ 27} 10. On November 3, 2021, claimant filed a complaint for writ of mandamus, requesting that this court vacate the commission's order that denied her PTD compensation, and to enter an order granting the compensation.

Conclusions of Law and Discussion:

{¶ 28} The magistrate recommends that this court deny the employer's request for a writ of mandamus.

{¶ 29} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000). Therefore, to be entitled to an extraordinary remedy in mandamus, the relator must demonstrate, by clear and convincing evidence, that the commission abused its discretion by entering an order not

supported by any evidence in the record. *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, ¶ 12.

{¶ 30} The relevant inquiry in a determination of PTD is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994).

{¶ 31} It is well-settled that the commission is the exclusive evaluator of weight and credibility. *LTV Steel Co.* Therefore, not only is a magistrate not required to evaluate the propriety of the commission's finding that a doctor's report is persuasive, it is inappropriate for a magistrate to engage in such an analysis. *State ex rel. Koepf v. Indus. Comm.*, 10th Dist. No. 18AP-753, 2019-Ohio-3789, ¶ 9. The commission is not required to note the evidence it finds unpersuasive or the reason for rejecting it, because "[l]ogic dictates that if the identity of rejected evidence is irrelevant, so is the reason for the rejection." *State ex rel. Bell v. Indus. Comm.*, 72 Ohio St.3d 575, 578 (1995). Accordingly, the commission does not need to state why it found one doctor's report more persuasive than that of another doctor. *Id.* at 577. When, however, the commission states a reason for rejecting a report, it may not do so arbitrarily. *State ex rel. Hutton v. Indus. Comm.*, 29 Ohio St.2d 9, 13-14 (1972). To avoid rejecting medical proof arbitrarily, the commission must have, "some reasonable basis for the * * * rejection of a physician's finding." *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 655 (1994).

{¶ 32} In the present matter, claimant argues there was no reasonable basis for the SHO to reject Dr. Pawlarczyk's May 30, 2021, report and Dr. Lyall's February 4, 2021, report. Claimant asserts that, although there were conflicting medical reports as to whether her physical allowances eliminate her ability to engage in sustained remunerative employment, there was no conflict as to the psychological evidence, as both Drs. Pawlarczyk's and Lyall's reports opined that claimant is permanently and totally disabled as to the allowed psychological conditions.

{¶ 33} With regard to Dr. Pawlarczyk's report, claimant contests the SHO's rejection of Dr. Pawlarczyk's report on the basis that Dr. Pawlarczyk contradicted himself when he opined claimant would not be able to tolerate typical work stress while also opining that the allowed condition results in only mild impairment. Claimant contends that the only place Dr. Pawlarczyk mentions "mild impairment" is in his percentage of impairment evaluation,

and Ohio Adm.Code 4121-3-34(D)(3)(f) provides that an "adjudicator shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for compensation for permanent total disability."

{¶ 34} However, contrary to claimant's argument, Dr. Pawlarczyk did not consider claimant's percentage of impairment as the sole basis for denying claimant's application for compensation for PTD. The SHO denied claimant's PTD application for several reasons, including that claimant was able to perform light-duty work for the employer for 28 years; claimant was laid off only due to the employer's moving its workforce to Mexico; following her layoff, claimant did not seek vocational rehabilitation; claimant's lack of sleep has been a chronic problem for a number of years, but she was still capable of working despite this issue; Dr. Scheatzle opined that claimant is capable of performing light work, and can sit, stand, walk, and lift with her right arm to shoulder height; claimant does not take any pain medications; claimant did not pursue any vocational rehabilitation; claimant performs activities of daily living inconsistent with being unable to perform all sustained remunerative employment; and claimant refuses psychotherapy treatment despite feeling stressed. With respect to Dr. Pawlarczyk's report specifically, the SHO provided two more reasons for rejecting Dr. Pawlarczyk's report as some evidence: (1) Dr. Pawlarczyk failed to explain how claimant is unable to return to sustained remunerative employment yet worked for 28 years after her injury in a light-duty capacity; and (2) Dr. Pawlarczyk indicates in his report that claimant has been diagnosed with an unspecified anxiety disorder, but the claim is not allowed for an anxiety disorder condition. Therefore, because the SHO did not consider claimant's percentage of impairment as the sole basis for denying claimant PTD compensation, the SHO's decision did not run afoul of the prohibition in Ohio Adm.Code 4121-3-34(D)(3)(f).

{¶ 35} With regard to Dr. Lyall's report, claimant contests the SHO's finding that Dr. Lyall's report could not constitute some evidence because Dr. Lyall incorrectly stated claimant had only worked for the employer of record for one and one-half years. Claimant points out that Dr. Lyall actually stated claimant worked about a year and half at the employer prior to her industrial injury but then stated claimant worked a number of years in a light-duty capacity.

{¶ 36} After comparing the whole of Dr. Lyall's report with the SHO's finding, the magistrate finds Dr. Lyall's report somewhat unclear as to claimant's work history. Although Dr. Lyall states that claimant worked for Genie Garage Door Company for one and one-half years before the injury, the description of the rest of her work history is vague, and on one issue (the reason for her layoff), completely wrong. After stating that claimant worked for Genie Garage Door Company for one and one-half years prior to the injury, Dr. Lyall states that she returned to work about one and one-half to two years later but did not specify it was with the employer of record. Dr. Lyall then states claimant worked for "a number" of years, which similarly fails to specify such work was for the same employer of record and, more importantly, understates that claimant returned to work for approximately 28 years after the injury. Moreover, Dr. Lyall then states incorrectly that claimant was laid off because she was forced to do heavy work again, which is contrary to claimant's hearing testimony and the SHO's finding that claimant was not laid off due to her industrial injury but, instead, due to the employer's moving the workforce to Mexico. This obvious error in Dr. Lyall's report was significant, as the SHO concluded that had it not been for the employer's moving operations to Mexico, claimant would have continued to work for the employer, which further casts doubt on Dr. Lyall's opinion that claimant is incapable of working.

{¶ 37} Thus, the SHO's statement that Dr. Lyall's report "incorrectly indicated that the Injured Worker had only worked for the Employer of record for one and [one-] half years" was technically correct, insofar as Dr. Lyall did not specifically indicate that the subsequent 28 years of employment was for the same employer of record. Notwithstanding, it is clear that in rejecting Dr. Lyall's report, the SHO found that the fact that claimant worked 28 years for the employer of record after her industrial injury was significant because the allowed depressive disorder did not impair claimant from performing light-duty work for this nearly three-decade span following the injury. The SHO was clearly troubled by claimant's 28-year post-injury work history, and Dr. Lyall's failure to adequately acknowledge or reconcile this fact with his finding that claimant cannot engage in sustained, remunerative employment. This is a valid basis for rejection of the report, as Dr. Lyall fails to answer a key question in this case: How did claimant's psychological condition render her permanently and totally disabled when considering she had worked

the prior 28 years in a light-duty position after her injury? *See State ex rel. Pavis v. GMC*, 65 Ohio St.3d 30, 33 (1992) (where a doctor leaves a key issue unanswered, the commission is entitled to conclude that the medical report's persuasiveness is either diminished or negated, and rejection of that report is not arbitrary); *State ex rel. Lockhart v. Indus. Comm.*, 10th Dist. No. 02AP-201, 2002-Ohio-6631, ¶ 106, citing *Pavis* (if it makes no sense that a left-knee injury would restrict relator to working at his home, then the commission can properly question why the doctor would have reached this opinion; when medical report raises obvious key questions that are left unanswered, the commission is entitled to conclude that the medical report's persuasiveness is either diminished or rejected). Thus, because the commission could have properly rejected Dr. Lyall's report based upon his failure to address a key issue in this case, the commission did not abuse its discretion when it did so.

{¶ 38} Although claimant does not raise any further substantive arguments in the argument portion of her brief in support, in her reply brief, she does raise an issue regarding the magistrate's finding that the SHO had some evidence to support his findings that claimant failed to participate in vocational rehabilitation. The SHO had some evidence to support the finding. The SHO cited claimant's hearing testimony that she did not seek vocational rehabilitation because she did not know if she could handle rehabilitation and the pressure of trying to keep up with everything. Despite claimant's testimony that pain and lack of sleep are her biggest stressors, the SHO found that claimant's lack of sleep had been a problem for a number of years, but she was still capable of working during this time despite this issue. The implication is that the SHO believed claimant should have been capable of vocational rehabilitation if she was able to continue working light duty while suffering from pain and lack of sleep. Also, although claimant argues that the SHO was wrong and that she did, in fact, participate in vocational rehabilitation in 1992 but was found medically unstable, the magistrate's discussion, in this regard, specifically referred to the lack of vocational rehabilitation after she was laid off. Furthermore, the magistrate acknowledged claimant was referred to vocational rehabilitation in 1993. For all of these reasons, there was some evidence to support the commission's order, and it did not abuse its discretion when it denied claimant PTD compensation.

{¶ 39} Accordingly, it is the magistrate's recommendation that this court should deny claimant's request for writ of mandamus.


/S/ MAGISTRATE
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).