[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, Slip Opinion No. 2022-Ohio-4581.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4581

THE STATE EX REL. WASTE MANAGEMENT OF OHIO, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, Slip Opinion No. 2022-Ohio-4581.]

*Workers' compensation—R.C. 4123.57(B)—Scheduled-loss benefits—Dependent of an injured worker who died within minutes of his industrial accident entitled to award of scheduled-loss benefits under R.C. 4123.57(B) for decedent's loss of use of his bilateral arms and legs between time of injury and time of death—Judgment affirmed.*

(No. 2021-0961—Submitted August 2, 2022—Decided December 22, 2022.)

APPEAL from the Court of Appeals for Franklin County, No. 19AP-453, 2021-Ohio-2478.

_____

**Per Curiam.**

{¶ 1} Travis Gelhausen died shortly after getting into an accident while driving a truck for appellant, Waste Management of Ohio, Inc. Appellee T.A. applied for benefits under R.C. 4123.57(B) on behalf of her and Gelhausen's minor daughter, appellee S.G., for Gelhausen's loss of the use of his arms and legs before his death. A staff hearing officer ("SHO") for appellee Industrial Commission of Ohio denied the application, but the commission later exercised its continuing jurisdiction and granted it.

{¶ 2} Waste Management asked the Tenth District Court of Appeals for a writ of mandamus ordering the commission to reverse its decision or to limit the amount of the award. The Tenth District denied the writ, and Waste Management appealed. It also moved for oral argument. We affirm the Tenth District's judgment, and we deny the motion for oral argument.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Gelhausen lost control of his truck during a turn, and it flipped onto the driver's side, pinning him in the wreckage. Jolene Szapowal was driving behind Gelhausen and stopped to help. In an affidavit, Szapowal said that when she approached the wreckage, she could see Gelhausen from his ribs to his knees and that he was still breathing. She said he continued breathing for approximately three minutes while she rubbed his legs in an attempt to comfort him. Then she witnessed his body seize and he stopped breathing. While she was with him, Szapowal did not see Gelhausen move his arms or legs.

{¶ 4} About an hour after the accident, rescuers extricated Gelhausen from the wreckage. He was pronounced dead two minutes later. The medical examiner determined that Gelhausen's cause of death was "the end result of mechanical asphyxia with * * * blunt force injuries of [the] head, neck, trunk, and extremities with cutaneous, soft tissue, and skeletal injuries." Waste Management, a self-insuring employer, approved S.G.'s application for death benefits.

{¶ 5} S.G. also requested compensation under R.C. 4123.57(B) for Gelhausen's loss of use of both arms and legs before he died.[1] R.C. 4123.57(B) sets forth a schedule providing for compensation payable at the statewide average weekly wage for a specific number of weeks that depends on the body part lost. Compensation is set at 225 weeks for the loss of an arm and at 200 weeks for the loss of a leg. *Id.* "Loss" as used in R.C. 4123.57(B) is equivalent to "loss of use"; compensation is payable for either amputation or "permanent and total loss of use due to paralysis." *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203, ¶ 13.

{¶ 6} Waste Management obtained an opinion from Paul T. Hogya, M.D., who examined documentation related to this workers' compensation claim, including the medical examiner's report and witness statements. Waste Management's lawyers asked Dr. Hogya, "Does the medical evidence demonstrate whether Mr. Gelhausen actually survived the crash for a discernible period of time?" His response first provided an operative definition for death: "The actual death is cessation of breathing, heart beat [sic], and brain function." He then explained that "[t]he only evidence that Mr. Gelhausen survived the crash for a discernible period of time [was] non-medical and from the lay witness, Ms. Szapowal." Dr. Hogya continued:

> The breathing activity referenced by Ms. Szapowal is what is known
> as agonal respirations. Agonal respirations are an inadequate pattern
> of breathing associated with extreme physiological distress. They
> are not adequate respiration[s] to sustain oxygenation. It can be
> thought of as more of an automatic response of the last remnants of
> the brainstem. Whatever the case, it can easily be confused for

---

1. S.G. additionally alleged that Gelhausen suffered a total loss of vision and a total loss of hearing before he died, but her application for compensation for those alleged losses are no longer at issue.

ordinary respiration, leading to the mistaken impression that the "breathing" person must also have a pulse. This confusion is part of why the American Heart Association no longer recommends checking for breathing as part of layperson's CPR. Ms. Szapowal estimated some three minutes of breathing. From a clinical standpoint, these estimates must always be considered with "a grain of salt" due to the stressful emergency nature of the situation. For instance, that is why estimates of seizure activity are notoriously inaccurate.

{¶ 7} S.G. obtained an opinion from Donato Borrillo, M.D., who also examined the records related to this claim. Dr. Borrillo stated that Gelhausen "was still alive at the time of his accident for a brief period of time, which was witness[ed] by a bystander who responded to the accident scene. His brief period of breathing [was] consistent with still being alive, as his autopsy did not reveal a decapitation or crush injury of the head."

{¶ 8} After reviewing Dr. Borrillo's opinion, Dr. Hogya renewed his own opinion in an addendum to his initial report. Dr. Borrillo, after reviewing Dr. Hogya's initial report, did likewise, stating in his own addendum:

Dr. Hogya is indeed correct in opining that agonal breathing carries a poor prognosis and is an indicator of impending death; however, Mr. Gelhausen was *alive and breathing* immediately after his violent accident. During this albeit brief period of being alive, which was of sufficient duration to be witnessed, Mr. Gelhausen suffered a permanent loss of use of both the upper and lower extremities as a result of his cervical injury.

4

(Emphasis sic.)

{¶ 9} The district hearing officer ("DHO") denied the requests for compensation, finding that "it ha[d] not been established that the decedent lived for a discernable period of time after sustaining the injuries which resulted [in] his death." The DHO discounted the statements in Szapowal's affidavit as unreliable because Szapowal was not a medical professional.

{¶ 10} S.G. appealed, and the matter was heard by an SHO. The SHO agreed that Gelhausen had not survived for a discernible period after his injury, finding that "Dr. Hogya indicates that breathing observed by the non-medical witness is known as agonal respirations, and they are not adequate respirations to sustain oxygenation." The SHO also found that S.G. had failed to establish that Gelhausen lost the use of his arms or legs before his death. S.G. again appealed, but a panel of three SHOs refused the appeal on behalf of the commission.

{¶ 11} S.G. moved for reconsideration. The commissioners concluded that the SHO's order contained a clear mistake of law and a clear mistake of fact. The commission therefore exercised its continuing jurisdiction over the claim. On reconsideration, the commission concluded that Gelhausen had survived the accident for at least three minutes and that prior to his death, he suffered the permanent loss of use of his arms and legs. The commission awarded S.G. 850 weeks of compensation for that loss.

{¶ 12} Waste Management filed a mandamus action in the Tenth District, seeking a writ ordering the commission to vacate its award and reinstate the SHO's order. Alternatively, Waste Management sought a writ ordering the commission to limit the award to one week of compensation per limb, for a total of four weeks. The Tenth District denied the writ, finding that the SHO had made a clear mistake

of fact and that the commission did not abuse its discretion by invoking its continuing jurisdiction. 2021-Ohio-2478, ¶ 14.[2] Waste Management appealed.

## II. ANALYSIS

{¶ 13} Waste Management argues that (1) the SHO's order contains no mistake of fact, so the commission's exercise of continuing jurisdiction was improper, (2) the commission's order did not adequately explain the SHO's mistake of law, and (3) even assuming the commission's award was proper, S.G. would have been entitled to compensation for only one week (or alternatively, four weeks), not 850 weeks.

### A. Legal Standards

{¶ 14} In a direct appeal of a mandamus action originating in a court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967). Waste Management is entitled to a writ of mandamus if it shows by clear and convincing evidence that it has a clear legal right to the requested relief, that the commission has a clear legal duty to provide it, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10. "When an order [of the commission] is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, 68 N.E.3d 757, ¶ 18.

### B. Mistake of Fact

{¶ 15} R.C. 4123.52(A) grants the commission continuing jurisdiction over its cases and empowers it to "make such modification or change" to prior orders "as, in its opinion, is justified." However, the commission may invoke its

---

2. The Tenth District concluded that the SHO did not make a clear mistake of law. *Id.* at ¶ 19. The commission now concedes that the SHO did not make a mistake of law.

continuing jurisdiction only if it finds (1) new and changed circumstances, (2) fraud, (3) a clear mistake of fact, (4) a clear mistake of law, or (5) an error by an inferior tribunal. *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, 155 N.E.3d 812, ¶ 11.

{¶ 16} Waste Management argues that the SHO's order contains no mistake of fact. We disagree.

{¶ 17} As the Tenth District pointed out, "there is no dispute among the medical experts that [Gelhausen] was breathing in some capacity for approximately three minutes after the accident." 2021-Ohio-2478 at ¶ 14. The only dispute was whether the breathing was "agonal." *See id*. "Agonal" means "of, relating to, or associated with agony, esp. the death agony or period of dying." *Webster's Third New International Dictionary* 43 (2002).

{¶ 18} Under Ohio probate law, "[a]n individual is dead if the individual has sustained either irreversible cessation of circulatory and respiratory functions or irreversible cessation of all functions of the brain, including the brain stem, as determined in accordance with accepted medical standards." R.C. 2108.40; *accord* R.C. 2105.35(A)(1). The SHO cited no evidence that Gelhausen had experienced the irreversible cessation of all brain functions, and it was undisputed that his respiratory functions had not ceased. The presence of breathing—even agonal breathing—means Gelhausen survived the accident. Breathing, at least in this context, is inconsistent with death.

{¶ 19} In *Moorehead*, we explained that "R.C. 4123.57(B) does not specify a required length of time of survival after a loss-of-use injury before benefits pursuant to R.C. 4123.57(B) are payable." 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203, at ¶ 14. Furthermore, "there is no language in R.C. 4123.57(B) requiring that an injured worker be consciously aware of his paralysis in order to qualify for scheduled loss benefits." *Id*. at ¶ 16. The SHO acknowledged that

Gelhausen had experienced three minutes of agonal breathing, yet the SHO found that Gelhausen did not survive the accident. That was a clear mistake of fact.

{¶ 20} Waste Management characterizes the commission's decision as a mere "disagreement in evidentiary interpretation," which it contends is not the same as a mistake of fact and is an improper basis for invoking continuing jurisdiction. *See State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97, 100, 766 N.E.2d 135 (2002). Waste Management asserts that the SHO relied on the opinion of Dr. Hogya over the affidavit of Szapowal and that the commission invoked its continuing jurisdiction because it disagreed with the SHO's weighing of the evidence. This argument implies that Dr. Hogya believed Gelhausen did not survive the accident. However, Dr. Hogya did not state such an opinion. Although he expressed skepticism about its reported three-minute duration, Dr. Hogya accepted Szapowal's report of Gelhausen's breathing, characterizing it as "agonal respirations." And as discussed above, agonal or not, under the circumstances present here, Gelhausen's respirations indicated that death had not yet occurred.

{¶ 21} Waste Management also points out that the SHO's decision had a second basis: that S.G. had not established that Gelhausen experienced paralysis before his death. That point is irrelevant. The existence of a clear mistake of fact allowed the commission to reopen the case, vacate the SHO's order, and reconsider all issues therein de novo. *See State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, 11 N.E.3d 231, ¶ 24. Once the case was reopened, the commission was free to reach a different conclusion than the SHO regarding any issues of law or fact. *See State ex rel. Haddox v. Indus. Comm.*, 135 Ohio St.3d 307, 2013-Ohio-794, 986 N.E.2d 939, ¶ 32.

{¶ 22} Finally, Waste Management points to three Tenth District cases that it claims are inconsistent with the court of appeals' decision in this case: *State ex rel. Sagraves v. Indus. Comm.*, 10th Dist. Franklin No. 10AP-1030, 2012-Ohio-1010; *State ex rel. Wallace v. Indus. Comm.*, 10th Dist. Franklin No. 11AP-897,

2013-Ohio-1015; and *State ex rel. Koepf v. Indus. Comm.*, 10th Dist. Franklin No. 18AP-753, 2019-Ohio-3789. We are not bound by any of these decisions, but regardless, they are distinguishable.

{¶ 23} Both *Sagraves* and *Wallace* involved conflicting evidence about whether the decedent had survived an accident, and the commission credited the evidence that did not support survival. *See Sagraves* at ¶ 3-4, 8; *Wallace* at ¶ 1, 6-10. Here, by contrast, Dr. Hogya and the SHO both accepted Gelhausen's postaccident breathing as fact—the dispute is not *whether* the breathing occurred, but how to characterize it and what it means.

{¶ 24} In *Koepf*, the decedent lived with the allowed condition—mesothelioma—for some time before his death, *id.* at ¶ 13, 17-19; the dispute was whether any loss of use of the extremities, eyes, or ears that decedent experienced at the end of his life was caused by the mesothelioma or by the "process of dying." *Koepf* at ¶ 7-13, 43-44. However, the issue in this case is not whether Gelhausen was paralyzed or what caused any paralysis he may have had—the issue is whether the commission abused its discretion by determining that the SHO's conclusion that Gelhausen could be both breathing and deceased was a clear mistake of fact. *Koepf* does not speak to that question.

### C. Adequate Explanation

{¶ 25} In an order invoking its continuing jurisdiction based on mistake of fact, the commission cannot simply state that a mistake occurred; it must state what the mistake was. *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, ¶ 15. This ensures that the party opposing the exercise of continuing jurisdiction can prepare its defense and that reviewing courts can determine whether the commission invoked its continuing jurisdiction properly. *Id*.

{¶ 26} Waste Management argues that the commission "never identified, much less explained" the SHO's clear mistake of fact. We disagree. The commission began its analysis by stating:

> [T]he Dependent has met the burden of proving the Staff Hearing
> Officer['s] order, issued 10/13/2018, contains a clear mistake of fact
> in the order from which reconsideration is sought, and a clear
> mistake of law of such character that remedial action would clearly
> follow. Specifically, the Staff Hearing Officer failed to properly
> apply the rule of *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio
> St.3d. 27, 2006-Ohio-6364, 857 N.E.2d 1203, to the facts in this
> claim.

The commission picked up this thread again a few paragraphs later:

> The Commission also relies upon *State ex rel. Moorehead v. Indus.*
> *Comm.*, *supra*, which held R.C. 4123.57(B) does not require any
> specific duration of survival after an employee suffers a loss of use,
> nor does it require the employee to be cognizant of the loss. The
> Commission finds R.C. 4123.57(B) is applicable here because the
> Decedent did in fact survive the injury, for at least three minutes. In
> support of its findings the Commission relies upon Ms. Szapowal's
> affidavit stating that following the injury, she saw the Decedent
> continue to breathe for approximately three minutes before he
> expired in her presence.

These paragraphs adequately identified and explained the mistake of fact as "the
SHO's finding that the decedent did not survive the injury when he had, in fact,
survived the accident for approximately three minutes," 2021-Ohio-2478 at ¶ 23.

10

### D. Amount of Award

{¶ 27} Waste Management argues that the commission abused its discretion by awarding S.G. the maximum amount for Gelhausen's injuries under R.C. 4123.57(B)—850 weeks of compensation—rather than one week of compensation or, alternatively, four weeks of compensation (one week for each limb). Waste Management argues that even if Gelhausen survived the accident, he did not live with the injuries for longer than a week.

{¶ 28} R.C. 4123.57(B) sets forth a schedule for weekly payments of compensation to an injured worker for loss resulting from a work injury. R.C. 4123.60 states:

> If the decedent would have been lawfully entitled to have *applied for an award* at the time of his death the administrator may, after satisfactory proof to warrant an award and payment, award and pay an amount, not exceeding the compensation which the decedent *might have received*, but for his death, for the period prior to the date of his death, to such of the dependents of the decedent * * * as the administrator determines in accordance with the circumstances in each such case, but such payments may be made only in cases in which application for compensation was made in the manner required by this chapter, during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person.

(Emphasis added.) S.G. applied for benefits within one year of Gelhausen's death. Under R.C. 4123.60, she was entitled to seek an award of the benefits that Gelhausen would have been entitled to apply for before his death, and she was entitled to receive an amount not exceeding the compensation that Gelhausen could

have received before his death.  The award to which S.G. is entitled is therefore determined by the award to which Gelhausen would have been entitled prior to his death.

{¶ 29} But for his death, Gelhausen could have sought compensation under R.C. 4123.57(B), and he could have sought to have the award commuted to a lump sum.  R.C. 4123.57(B) states: "Compensation paid in weekly installments according to the schedule described in this division may only be commuted to one or more lump sum payments pursuant to the procedure set forth in section 4123.64 of the Revised Code."  And R.C. 4123.64(A) states:

> The administrator of workers' compensation, under special circumstances, and when the same is deemed advisable for the purpose of rendering the injured or disabled employee financial relief or for the purpose of furthering the injured or disabled employee's rehabilitation, may commute payments of compensation or benefits to one or more lump-sum payments.

R.C. 4123.64(B) requires the administrator of the Bureau of Workers' Compensation to adopt rules governing the awarding of lump-sum payments. Adopted under that authority, Ohio Adm.Code 4123-3-37(A)(1) essentially restates the text of R.C. 4123.64(A), providing that "[t]he bureau may grant a lump sum advancement to a claimant" from an R.C. 4123.57(B) award.

{¶ 30} Therefore, the award Gelhausen "might have received, but for his death," R.C. 4123.60, included a lump-sum advance of the full 850 weeks of compensation to which he would have been entitled under R.C. 4123.57(B). Because R.C. 4123.60 allows S.G. to receive an award *up to* that amount, we

conclude that the commission did not abuse its discretion by awarding S.G. the full amount.[3]

### *E. Oral Argument*

{¶ 31} Finally, Waste Management moves for oral argument. In a direct appeal, granting a request for oral argument is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we consider whether the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *See State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23.

{¶ 32} Waste Management argues that this case involves a matter of great public importance: the question whether the dependents of an employee who does not survive an industrial accident for a discernible period are entitled to benefits under R.C. 4123.57(B). But as explained above, Gelhausen did survive the accident for a discernible period. Waste Management also argues that this court has never had the opportunity to clarify the number of weeks of compensation that an employee such as Gelhausen would have been entitled to. However, the briefs adequately address this question, and the applicable statutes answer it. Finally,

---

3. Waste Management asserts the inapplicability of the portion of R.C. 4123.57(B) that provides as follows:

> When an employee has sustained *the loss of a member by severance*, but *no award has been made on account thereof prior to the employee's death*, the administrator shall make an award in accordance with this division for the loss which shall be payable to the surviving spouse, or if there is no surviving spouse, to the dependent children of the employee and if there are no such children, then to such dependents as the administrator determines.

(Emphasis added.) Waste Management points out that Gelhausen's arms and legs were not severed. That is irrelevant, however, because as Waste Management admits, R.C. 4123.60 also applies to this situation—the loss of use due to paralysis. *See Moorehead*, 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203, at ¶ 13-16, 21, fn.2 (acknowledging the application of both R.C. 4123.57(B) and 4123.60 to a similar claim).

Waste Management asserts that the Tenth District's judgment in this case conflicts with its judgments in *Sagraves*, 10th Dist. Franklin No. 10AP-1030, 2012-Ohio-1010; *Wallace*, 10th Dist. Franklin No. 11AP-897, 2013-Ohio-1015; and *Koepf*, 10th Dist. Franklin No. 18AP-753, 2019-Ohio-3789. However, as explained above, that is not the case. We deny the motion for oral argument.

### III. CONCLUSION

{¶ 33} For the foregoing reasons, we affirm the Tenth District Court of Appeals' judgment denying the writ, and we deny the motion for oral argument.

Judgment affirmed.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

{¶ 34} I dissent from the majority's denial of appellant Waste Management of Ohio, Inc.'s request for oral argument and the denial of Waste Management's request for a writ of mandamus. A request for oral argument is subject to this court's discretion, S.Ct.Prac.R. 17.02(A), and in exercising that discretion, we consider "whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals," *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15. Because issues involving the workers' compensation system have a significant impact on the state and Ohioans, and because the question whether both a scheduled-loss benefit and a death benefit can be simultaneously paid to an injured worker's dependent when the worker's death occurs shortly after the injury is a complex question of statutory law, this court should grant oral argument.

{¶ 35} Moreover, contrary to the majority's decision, the plain and unambiguous language of the statutory scheme at issue here allows scheduled-loss benefits to be paid to an injured worker's dependents in only two circumstances: (1) when an award had been made prior to the injured worker's death and (2) when the injured worker suffered the loss of a member by severance. R.C. 4123.57(B). Neither circumstance exists here. Therefore, I would reverse the judgment of the Tenth District Court of Appeals, grant Waste Management's request for a writ of mandamus, and order appellee the Industrial Commission of Ohio to reinstate the order of the staff hearing officer ("SHO"). Because the majority does otherwise, I dissent.

**Because simultaneous recovery is a matter of great public importance, this court should grant oral argument**

{¶ 36} The question before this court centers on the interplay between various workers' compensation statutes and the exceptions in those statutes. In *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203, this court left open the very question that is presently before this court: whether an injured worker's dependent can receive both a scheduled-loss benefit and a death benefit when the time between the worker's injury and resulting death is short. Granting oral argument in this case would allow for a thorough discussion of the complex statutory scheme and for consideration of the issue in full. But because the majority proceeds to judgment without the benefit of oral argument, I address the question presently before the court: Is an injured worker's dependent entitled to receive the total weekly installment under the scheduled-loss-benefit provision in R.C. 4123.57(B) when the worker died shortly after sustaining his or her injury? Contrary to the majority's decision and based on the facts presented in this case, the answer is no.

{¶ 37} Because the law does not afford appellee S.G. the relief that she seeks, it is unnecessary to examine whether there was a mistake of fact or an

adequate explanation by the commission about its continuing jurisdiction under the mistake-of-fact provision. *See State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, 155 N.E.3d 812, ¶ 11.

{¶ 38} Moreover, before answering the question that is before the court, some background on how the workers' compensation program works is helpful.

**Temporary-disability benefits**

{¶ 39} When a worker is involved in an industrial accident and suffers an injury that results in the injured worker being unable to return to work, Ohio's workers' compensation system provides financial assistance to replace wages that the worker loses on account of the workplace injury. *See* R.C. 4123.54(A). Upon approval of a workers' compensation claim, an injured worker who is unable to work because of his or her work-related injury is entitled to receive temporary-disability benefits in the amount of "sixty-six and two-thirds per cent of the employee's average wage so long as such disability is total." R.C. 4123.56(A).

{¶ 40} Any one of four occurrences may cause the payment of temporary-total-disability benefits to end: (1) the injured worker returns to work, (2) the treating physician issues a statement that the injured worker is capable of returning to work in his or her former position of employment, (3) the employer provides work within the injured worker's physical capabilities, or (4) the injured worker has reached his or her maximum medical improvement. *Id*.

{¶ 41} As set forth below, an injured worker may be entitled to partial-disability benefits under R.C. 4123.57. But once an injured worker has received 200 weeks of temporary-total-disability benefits, the Bureau of Workers' Compensation has the authority to schedule the injured worker for an evaluation to determine whether the worker's temporary disability has become a permanent disability. *Id*. And if an injured worker has reached maximum medical improvement and can return to work but suffers wage loss because he or she cannot return to his or her former position of employment or cannot find work consistent

with his or her disability, the statute provides for additional compensation. *See* R.C. 4123.56(B)(1) and (2).

**Partial-disability benefits**

{¶ 42} Partial-disability benefits are paid pursuant to R.C. 4123.57. With some exceptions that are irrelevant here, an injured worker may file a claim for partial-disability benefits "not earlier than" 26 weeks after the termination of temporary-total-disability benefits provided for under R.C. 4123.56 or 26 weeks after the date of injury. R.C. 4123.57.

{¶ 43} When an injured worker files a claim for partial-disability benefits, the bureau is required to determine the percentage, if any, of the injured worker's partial disability under R.C. 4123.57. That statute also establishes the minimum and maximum amounts allowed for an injured worker who is determined to be partially disabled. R.C. 4123.57(A). If an award of partial-disability benefits is made, then the injured worker is entitled to receive compensation from "the date of the last payment of compensation, or, in cases where no previous compensation has been paid, from the date of the injury." *Id*.

{¶ 44} There is no allegation that compensation for partial disability under R.C. 4123.57(A) is at issue here; this case is about the propriety of an award of scheduled-loss benefits under R.C. 4123.57(B).

{¶ 45} R.C. 4123.57(B) provides for payment of scheduled-loss benefits in weekly installments to compensate the injured worker for the loss of certain body parts. The General Assembly included two provisions in R.C. 4123.57(B) protecting the right of the injured worker's dependents to receive benefits in the event of the injured worker's death.

{¶ 46} The first provision states that "[w]hen an award under this division *has been made* prior to the death of an employee, all unpaid *installments accrued or to accrue* under the provisions of the award shall be payable" to the injured workers' dependents. (Emphasis added.) *Id*. The second provision provides that

if an injured worker "has sustained the *loss of a member by severance*, but no award has been made on account thereof prior to the employee's death, the administrator shall make an award in accordance with this division for the loss" and that amount is payable to the injured worker's dependents. (Emphasis added.) *Id.*

{¶ 47} In this case, S.G. is not entitled to scheduled-loss benefits under either of these provisions. R.C. 4123.57(B) generally limits the right of an injured worker's dependent to receive scheduled-loss benefits to those cases in which an award was made "prior to the death" of the injured worker. Here, no scheduled-loss benefits were awarded prior to the death of the injured worker, Travis Gelhausen, because he died mere minutes after the injury occurred. Therefore, no installments "accrued or [were] to accrue" under the statute. *Id.* And because Gelhausen did not suffer a scheduled loss by severance, the second provision protecting the right of the dependent to receive an injured worker's scheduled-loss benefits that were not previously awarded is inapplicable. Because nothing in R.C. 4123.57(B) provides for payment of scheduled-loss benefits to S.G., I turn to R.C. 4123.60. But S.G's claim fairs no better under that statute.

**Death benefits**

{¶ 48} After establishing whether a dependent is eligible to receive benefits in the event of an injured worker's death, R.C. 4123.60 places limitations on the right of the dependent to receive those benefits. That statute provides in part:

> In all cases *where an award had been made* on account of temporary, or permanent partial, or total disability, in which there *remains an unpaid balance*, representing payments *accrued and due* to the decedent *at the time of his death*, the administrator may, after satisfactory proof has been made warranting such action, award or pay any unpaid balance of such award to such of the dependents of the decedent * * *.

(Emphasis added.) R.C. 4123.60.

{¶ 49} A plain reading of the foregoing provision in its entirety shows that it places two limitations on the payment of temporary-, permanent-partial-, or total-disability compensation to an injured worker's dependent. The first limitation is that the award must have been made "prior" to the death of the injured worker. *Id.* The second limitation is that *only* those temporary-, permanent-partial-, or total-disability benefits that were unpaid to the injured worker and had "accrued and [were] due" to the worker at the time of his or her death are payable to the injured worker's dependent. *Id.* The "accrued" language in R.C. 4123.60 is not new. The General Assembly used that same verbiage as a word of limitation regarding a dependent's entitlement to partial-disability compensation under R.C. 4123.57(A) and (B).

{¶ 50} But the foregoing language in R.C. 4123.60 does not apply here, because, again, Gelhausen died before an award of temporary-, permanent-partial-, or total-disability benefits had been made. Therefore, nothing had accrued at the time of his death that would be payable to S.G.

{¶ 51} The statute then provides that an injured worker's dependent may apply for benefits "during the lifetime of such injured or disabled person, or within one year after the death of such injured or disabled person" if "the decedent would have been *lawfully entitled* to have applied for an award *at the time of his death*." (Emphasis added.) *Id.* As set forth above, Gelhausen would not have been *lawfully entitled* to apply for a scheduled-loss benefit at the time of his death. Under R.C. 4123.57, partial-disability benefits are only available *26 weeks after the termination of temporary-disability benefits or the date of injury*. Neither time period had passed prior to his death, so Gelhausen was not lawfully entitled to scheduled-loss benefits under R.C. 4123.57(B).

**{¶ 52}** The majority creates its desired outcome by reading only parts of the statutory scheme and ignoring the plain language of R.C. 4123.57(B). But our role as members of the judiciary is to "examine the statutory scheme as a whole as well as the specific code sections immediately at issue." *Holben v. Interstate Motor Freight Sys.*, 31 Ohio St.3d 152, 156, 509 N.E.2d 938 (1987). And "[i]t is a cardinal rule of statutory construction that a statute's meaning is determined by the language that is used. If the language is clear and unambiguous, we apply the statute as written and refrain from adding or deleting words." *In re N.M.P.*, 160 Ohio St.3d 472, 2020-Ohio-1458, 159 N.E.3d 241, ¶ 21.

### The majority fails to read the statutory scheme as a whole

**{¶ 53}** The majority holds that "[t]he award to which S.G. is entitled is * * * determined by the award to which Gelhausen would have been entitled prior to his death. But for his death, Gelhausen could have sought compensation under R.C. 4123.57(B)." Majority opinion, ¶ 29. The problem with the majority's reasoning is that the statutory scheme does not say that, and invoking the words of causation does not change the plain meaning of R.C. 4123.57 and 4123.60.

**{¶ 54}** "Because the General Assembly is the final arbiter of public policy, judicial policy preferences may not be used to override valid legislative enactments." *State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, 779 N.E.2d 226, ¶ 17. And the legislature has decided that a scheduled-loss benefit is payable to the dependent of an injured worker who has died only if one of the following circumstances is present: (1) an award had been made prior to the injured worker's death or (2) the injured worker suffered loss of a member by severance. R.C. 4123.57(B). This ensures that death benefits for loss of use have a strong evidentiary basis. In such situations, and unlike the circumstances of this case, the loss of use cannot be disputed. Neither circumstance is present in this case.

{¶ 55} As set forth above, R.C. 4123.57(B) provides that when the injured worker suffers a scheduled loss by "severance," then even if there was no scheduled-loss benefit awarded prior to death, the administrator is to "make an award" to the injured worker's dependent for the scheduled loss. This language is important because it demonstrates that the General Assembly intended that scheduled-loss benefits accrue at the time of severance. *See State ex rel. Estate of McKenney v. Indus. Comm.*, 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694, ¶ 14. And if the General Assembly had intended to permit dependents to receive death benefits for all scheduled losses, regardless of whether an award had been made before the injured worker's death, there would have been no need for it to specify that when loss of use *by severance* has occurred, scheduled-loss benefits are payable after death even when no such award had been made prior to death. "We must give effect to every term in a statute and avoid a construction that would render any provision meaningless, inoperative, or superfluous." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 23. Gelhausen did not suffer a scheduled loss by severance, so that provision of R.C. 4123.57(B) is plainly *not* applicable here.

{¶ 56} And the only other scheduled-loss-benefit provision does not provide for death benefits in these circumstances either. R.C. 4123.57(B) requires that an award for scheduled-loss benefits have been made "prior to the [injured worker's] death" and that the dependent receive only that amount which has "accrued or [was] to accrue." As this court has previously stated, R.C. Chapter 4123 does not define the term "accrued." *McKenny* at ¶ 8. Therefore, the term is given its "usual, normal, or customary meaning." *Id.*, quoting *State ex rel. Bowman v. Columbiana Cty. Bd. of Commrs.*, 77 Ohio St.3d 398, 400, 674 N.E.2d 694. And the term "accrued" means "to come into existence as an enforceable claim: vest as a right." *Id.*, quoting *Webster's Third New International Dictionary* 13 (1986).

**{¶ 57}** Because the plain language of the statute requires that an award for scheduled-loss benefits be made prior to the death of an injured worker, the award would not have accrued until that time. As set forth above, Gelhausen died mere minutes after his industrial accident. Unlike the other provision of R.C. 4123.57(B), which allows the commission to make an award for scheduled-loss benefits after the worker's death for loss of a member by severance, this provision places a limitation on a dependent's receipt of scheduled-loss benefits to those instances in which the injured worker had received an award for scheduled-loss prior to his or her death. The majority ignores this language and finds that "but for his death, Gelhausen could have sought compensation under R.C. 4123.57(B)," majority opinion at ¶ 29, but that language is not in the statute.

**{¶ 58}** Moreover, the majority finds no abuse of discretion in the commission's award to S.G. of a "lump-sum advance of the full 850 weeks of compensation," *id.* at ¶ 30, even though all of that could not have accrued in the few minutes of life that Gelhausen had between the time of his accident and his death. The majority prattles on about the ability of the commission to commute a weekly installment to a lump-sum payment, but it is simply that, prattling on. The lump-sum-payment provision of R.C. 4123.64 does not override the legislature's plain and unambiguous language in R.C. 4123.57(B) requiring that the scheduled-loss award be made prior to the injured worker's death and that the only amount of the scheduled-loss benefit that is payable to a dependent would be the amount "accrued or to accrue."

**{¶ 59}** Moreover, the-lump-sum-payment provision in R.C. 4123.64 does not override the plain and unambiguous language of R.C. 4123.60. It is only when an award of temporary-, permanent-partial-, or total-disability benefits has been made prior to the death of an injured worker and there "remains an unpaid balance" that the injured worker's dependent is entitled to receive the unpaid benefits, which

"represent[s] payments accrued and due to the decedent at the time of his death." R.C. 4123.60.

{¶ 60} Therefore, even if S.G. were entitled to scheduled-loss benefits, which she is not, she is certainly not entitled to the full 850 weeks of compensation—she would be entitled only to the remaining unpaid balance that had accrued and was due to Gelhausen at the time of his death. As the *McKenney* court said, "[i]f the entire amount accrued immediately * * * then there would be no need for this language." 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694, at ¶ 11.

{¶ 61} As set forth above, Gelhausen died mere minutes after his industrial accident. Unlike the provision in R.C. 4123.57(B) that allows dependents to claim a scheduled loss after the injured worker's death when severance of a member occurs, the other provision in that statute makes no such allowance. It requires an award of scheduled-loss benefits to have been made prior to the injured worker's death.

{¶ 62} Gelhausen's death is tragic. But based on the plain and unambiguous language of the applicable statutes, S.G. is limited to an award of death benefits that the Ohio workers' compensation program provides. She is not entitled to an additional award of scheduled-loss benefits.

## Conclusion

{¶ 63} The plain language of R.C. 4123.57(B) does not allow the payment of scheduled-loss benefits to an injured worker's dependent unless (1) an award for such benefits was made prior to the death of the injured worker or (2) the injured worker suffered the severance of a member. Because Gelhausen would not have been "lawfully entitled" to apply for such benefits at the time of his death, R.C. 4123.60, his dependent is not entitled to the scheduled-loss benefits. Therefore, I would reverse the judgment of the Tenth District Court of Appeals and grant the writ of mandamus sought by Waste Management, reversing the order of the

Industrial Commission and ordering the reinstatement of the order of the SHO. Because the majority does otherwise, I dissent.

DEWINE, J., concurs in the foregoing opinion.

_____

Dinsmore & Shohl, L.L.P., and Brian P. Perry, for appellant.

Dave Yost, Attorney General, and Natalie J. Tackett, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Plevin & Gallucci Co., L.P.A., Frank L. Gallucci III, Bradley Elzeer II, and Fred S. Papalardo Jr.; and Flowers & Grube, Louis E. Grube, Paul W. Flowers, and Melissa A. Ghrist, for appellees S.G. and T.A.

The Law Offices of Charles W. Kranstuber, L.P.A., and Carley R. Kranstuber, urging affirmance on behalf of amicus curiae, Ohio Association for Justice.

_____