[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ottinger v. B&B Wrecking & Excavating Inc.*, Slip Opinion No. 2024-Ohio-1656.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1656

THE STATE EX REL. OTTINGER, APPELLANT, *v*. B&B WRECKING & EXCAVATING, INC.; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ottinger v. B&B Wrecking & Excavating Inc.*, Slip Opinion No. 2024-Ohio-1656.]

*Workers' compensation—R.C. 4123.52—R.C. 4123.57(B)—Industrial Commission did not abuse its discretion by exercising its continuing jurisdiction to reverse order of Bureau of Workers' Compensation that awarded injured worker scheduled-loss compensation under R.C. 4123.57(B), because award was based on mistake of fact and mistake of law, which commission identified when exercising its continuing jurisdiction—Documentation from independent medical examination conducted after bureau issued its erroneous award was properly considered by commission as some evidence supporting its denial of injured worker's motion for scheduled-loss compensation—Court of appeals' judgment affirmed.*

(No. 2023-0763—Submitted March 26, 2024—Decided May 2, 2024.)

APPEAL from the Court of Appeals for Franklin County,
No. 19AP-745, 2023-Ohio-1758.

_____

**Per Curiam.**

{¶ 1} The Bureau of Workers' Compensation awarded appellant, Billy J. Ottinger, scheduled-loss compensation under R.C. 4123.57(B) for the loss of use of both legs ("loss-of-use compensation"). Appellee, Industrial Commission of Ohio, exercised its continuing jurisdiction and vacated the bureau's decision; it then denied Ottinger's request for loss-of-use compensation. Ottinger sought a writ of mandamus in the Tenth District Court of Appeals directing the commission to reinstate the bureau's decision. The court of appeals denied the request for a writ, and Ottinger appealed to this court as of right. Because the commission's order is supported by some evidence, we affirm the Tenth District's judgment.

## I. BACKGROUND

{¶ 2} Ottinger was working for B&B Wrecking & Excavating, Inc., on June 12, 2018, when he fell from a roof and landed on his legs. At the emergency department, Ottinger presented with some sensation in his lower extremities, but he was unable to move his legs. He regained some sensation following emergency spinal surgery but continued to experience significant weakness and immobility in his legs. The bureau allowed Ottinger's workers' compensation claim for, among other conditions, "incomplete spinal cord injury" and "paraplegia, incomplete."

{¶ 3} According to medical literature included in the record, "having an incomplete [spinal-cord injury] does not imply the ability to walk or even bear weight on the lower extremities," Oleson, *Osteoporosis Rehabilitation*, Chapter 9: Osteoporosis in Spinal Cord Medicine, 137 (2017). The ASIA (American Spinal Injury Association) Impairment Scale ("AIS") sets forth five impairment levels following a spinal-cord injury, denoted "A" through "E," with level "A" representing a complete spinal-cord injury from which no sensory or motor function

2

is preserved and level "E" representing the patient's return to normal sensory and motor function. *Id*. at 134-135.[1]

{¶ 4} Emergency-department physicians assessed Ottinger's spinal-cord injury as "L1 ASIA B," and when he began physical therapy postoperatively, he was unable to ambulate. Within one month, Ottinger's spinal-cord injury was assessed as "L1 AIS C," and he was able to ambulate up to 35 feet using leg braces and a wheeled walker and with the assistance of two people. By December 2018, he could stand briefly with leg braces and ambulate with a walker for 200 feet, but both legs would buckle, drag, and catch on the ground.

{¶ 5} The following month, in January 2019, Ottinger filed a motion for scheduled-loss compensation under R.C. 4123.57(B) for the loss of use of both legs. He asked the bureau to "please consider * * * the medical [documentation] on file and the fact that his claim is allowed for 'paraplegia.' " A bureau nurse reviewed Ottinger's loss-of-use claim and entered the following note in the bureau's file on January 31, 2019:

> RN reviewed [Ottinger's] C86 request for compensation for the functional loss of use of both of his lower extremities. The medical evidence and exam findings from Lifeforce, Akron City Hospital on 06/12/2018, and the allowed condition in the claim, Paraplegia—defined as paralysis of the legs and lower body— supports the request for compensation for the functional loss of use of both his lower extremities.

---

1. *See also ASIA*, International Standards for Neurological Classification of SCI (ISNCSCI) Worksheet, https://asia-spinalinjury.org/wp-content/uploads/2019/04/ASIA-ISCOS-IntlWorksheet_2019.pdf#page=1 (accessed April 8, 2024) [https://perma.cc/332B-ARYN].

**{¶ 6}** On February 4, 2019, the bureau granted Ottinger's motion for loss-of-use compensation. In its decision, the bureau listed all previously allowed medical conditions in the claim, including "paraplegia, incomplete." Based on Ottinger's motion, the emergency-department report from the date of injury, and "medical documentation in [the] claim," the bureau found that Ottinger had sustained the loss of both legs due to loss of use. The bureau modified its decision two days later, on February 6, by changing only the date of payment for the loss-of-use award for the right leg. That decision was not appealed.

**{¶ 7}** Then, on March 5, 2019, Ottinger requested an award of permanent-total-disability ("PTD") compensation under R.C. 4123.58(C)(1), which provides that a claimant "shall be compensated" for PTD when the claimant has lost the use of both legs. Based on the loss-of-use award issued by the bureau and "medical documentation" from the date of injury, a staff hearing officer ("SHO") for the commission issued a tentative order on March 15, awarding Ottinger PTD compensation for "the loss of use of both legs resulting from the allowed condition of incomplete paraplegia." The bureau objected to the SHO's order, citing "insufficient medical documentation that the injured worker's request for statutory [PTD compensation] under R.C. 4123.58(C) rises to the level of permanent and total loss of use."

**{¶ 8}** On March 21, 2019, the bureau filed a motion requesting that the commission exercise its continuing jurisdiction "based on a clear mistake of fact, law, and clerical error" and that it vacate the bureau's February 2019 decision awarding Ottinger loss-of-use compensation. The bureau explained:

> The order was based on [Ottinger's] motion dated 01/22/2019 requesting loss of use of the right and left leg[s] based on the allowance of paraplegia. The claim is only allowed for paraplegia, incomplete and not paraplegia. The order was based on a nurse

4

review on 01/31/2019 that found loss of use based on the allowance of paraplegia and the medical records on the date of injury. After the date of injury, [Ottinger] had emergency surgery and extensive physical therapy. He has not been found to have reached maximum medical improvement. There are physical therapy records from January 10, 2019 that indicate that [Ottinger] has regained the ability to walk. The [bureau's] order should be vacated and the request for the loss of use award [for] the right and left leg[s] should be denied due to lack of medical evidence to support loss of use.

{¶ 9} On April 27, 2019, following a hearing on the motion to exercise continuing jurisdiction, a district hearing officer ("DHO") found that the bureau had properly invoked the commission's continuing jurisdiction "based upon clear mistake of fact, mistake of law and error by [an] inferior tribunal." The DHO vacated the bureau's February 2019 decision and denied Ottinger's motion for loss-of-use compensation. The DHO found that the bureau's mistake of fact was basing its decision on an incorrect diagnosis of paraplegia when there was evidence that Ottinger could stand and ambulate independently with a wheeled walker. The DHO found that the bureau's mistake of law was "that the award of a scheduled loss of use of the right and left legs is inappropriate when an Injured Worker demonstrates some ability or function of [the] lower extremities." Ottinger appealed this order administratively.[2]

---

2. In his merit brief filed in this court, Ottinger challenges the mistake of law as found by the DHO, arguing that caselaw supports an award for loss-of-use compensation when the injured worker retains some level of residual function. *See, e.g.*, *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, 943 N.E.2d 541, ¶ 21-22. However, as noted throughout this opinion, the mistake of law as found by the DHO was not the same mistake of law subsequently found by the SHO on administrative appeal.

{¶ 10} At the commission's request, an independent medical examination ("IME") was conducted on July 8, 2019, by Michael Harris, M.D., who opined that Ottinger's "allowed injuries <u>have not</u> resulted in a total, permanent loss of use of the left and right legs to such a degree that the affected body parts are useless for all practical purposes."  (Underlining sic.)

{¶ 11} On August 6, 2019, after a hearing on Ottinger's administrative appeal, another SHO affirmed the DHO's order vacating the bureau's February 2019 order and denying Ottinger's motion for loss-of-use compensation.  The SHO made independent factual findings, including that "as a matter of fact and law," the bureau's decision was based on a condition—paraplegia—that "was not, and is not, allowed in this claim."  The commission denied Ottinger's request for reconsideration of the SHO's order.

{¶ 12} Ottinger subsequently filed this mandamus action in the Tenth District, alleging that the commission's exercise of continuing jurisdiction was an abuse of discretion.  The court of appeals denied the request for a writ of mandamus, concluding (1) that the commission found at least one clear mistake of fact that is supported by some evidence and (2) that to award Ottinger loss-of-use compensation based on that evidence was a clear mistake of law.  2023-Ohio-1758, ¶ 19-21.  We review Ottinger's appeal of the Tenth District's judgment as of right.

## II.  LEGAL ANALYSIS

### A.  *Mandamus Standard*

{¶ 13} In a direct appeal of the judgment in a mandamus action that originated in a court of appeals, we review the judgment as if the action had been originally filed in this court.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967).

{¶ 14} Ottinger is entitled to a writ of mandamus if he shows by clear and convincing evidence that he has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that he has no adequate

remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10.

{¶ 15} R.C. 4123.512(A) provides for the right to appeal a commission's final order "in any injury or occupational disease case, other than a decision as to the extent of disability." Appellate review is limited to "decisions involving a claimant's right to participate or to continue to participate" in the workers' compensation fund. *Afrates v. Lorain*, 63 Ohio St.3d 22, 584 N.E.2d 1175 (1992), paragraph one of the syllabus, citing former R.C. 4123.519 (renumbered as R.C. 4123.512, effective Oct. 20, 1993, *see* Am.Sub.H.B. No. 107, 145 Ohio Laws, Part II, 2990, 3153-3156). Because the commission's decision to exercise its continuing jurisdiction in this case does not involve Ottinger's right to participate in or to continue to participate in the fund, it is not appealable under R.C. 4123.512(A) and must be challenged by way of a mandamus action. *See State ex rel. Belle Tire Distribs., Inc. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122, 116 N.E.3d 102, ¶ 18, citing *State ex rel. Saunders v. Metal Container Corp.*, 52 Ohio St.3d 85, 86, 556 N.E.2d 168 (1990). *But see State ex rel. Carroll v. Galion Assisted Living, Ltd.*, 149 Ohio St.3d 326, 2016-Ohio-8117, 75 N.E.3d 140 (because commission's exercise of continuing jurisdiction prevented claimant from participating in the workers' compensation fund, claimant had an adequate remedy in the ordinary course of the law by way of appeal and was therefore not entitled to a writ of mandamus).

{¶ 16} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel.*

*Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997). We "will not order the commission to vacate its decision if the decision is supported by some evidence." *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, 155 N.E.3d 812, ¶ 23.

### B. The Commission's Continuing Jurisdiction

{¶ 17} In his first proposition of law, Ottinger conflates our standard for reviewing whether the commission abused its discretion with the commission's standard for exercising its continuing jurisdiction. Ottinger argues that the commission abused its discretion by exercising its continuing jurisdiction to vacate a decision of the bureau that was supported by "some evidence." However, in contrast to our deferential standard of review, the commission has broad authority to exercise continuing jurisdiction over workers' compensation cases.

{¶ 18} Under R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." However, this broad authority is not without limit. There must be evidence of either " '(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by [an] inferior tribunal.' " *Neitzelt* at ¶ 11, quoting *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459, 692 N.E.2d 188 (1998). "The commission must both identify and explain the prerequisite on which it relies." *State ex rel. Tantarelli v. Decapua Ents., Inc.*, 156 Ohio St.3d 258, 2019-Ohio-517, 125 N.E.3d 850, ¶ 16, citing *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, 817 N.E.2d 398, ¶ 15. It is insufficient for the commission to cite only the possibility of an unspecified error. *State ex rel. Foster v. Indus. Comm.*, 85 Ohio St.3d 320, 322, 707 N.E.2d 1122 (1999), citing *Nicholls* at 459.

### C. The Commission's Order Vacating the Bureau's Decision

**{¶ 19}** R.C. 4123.57(B) authorizes compensation to an injured worker for the loss of enumerated body parts, including a leg, for a specified number of weeks. For purposes of R.C. 4123.57(B), "loss" includes amputation or severance as well as the loss of use of the affected body part that is both permanent and total, to the same effect and extent as if the body part had been physically removed. *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403-404, 390 N.E.2d 1190 (1979), citing *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 67, 322 N.E.2d 660 (1975). A claimant must demonstrate with medical evidence a total loss of use of the body part "for all practical intents and purposes," *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, ¶ 12. But it is not necessary that the injured body part be of absolutely no use for it to have lost its use for all practical purposes. *See id.* at ¶ 13; *see also State ex rel. Kroger v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, 943 N.E.2d 541, ¶ 22 ("residual use does not necessarily bar an award" for total loss of use under R.C. 4123.57(B)).

**{¶ 20}** Here, the bureau initially found that Ottinger had sustained the loss of both legs under R.C. 4123.57(B) due to loss of use. It based that decision on the information contained in Ottinger's motion for loss-of-use compensation, the emergency-department report, and "medical documentation in [the] claim." Then, after Ottinger filed his motion for PTD compensation, the bureau argued to the commission that there was a lack of medical evidence to support the award for loss-of-use compensation that it had previously issued and that the order granting that award should be vacated.

**{¶ 21}** The SHO determined that the bureau's decision granting Ottinger loss-of-use compensation constituted an error of an inferior tribunal based on a mistake of fact and a mistake of law. The SHO found "as a matter of fact and law" that the bureau's decision "was based on a condition which was not, and is not,

allowed in this claim." Specifically, the SHO found that whereas Ottinger's claim was allowed for "paraplegia, incomplete," the bureau's order granting Ottinger an award for loss of use "was at least partially based on the incorrect assumption that this claim is allowed for paraplegia." (Capitalization deleted.) The SHO noted (1) that Ottinger had incorrectly asserted in his own motion that his claim was allowed for "paraplegia" and (2) that a nurse's review of the case, which was documented in the bureau's file, had also misstated that the allowed condition in the claim was " '[p]araplegia.' " The SHO concluded:

> Specifically, the [bureau] note dated 01/31/2019 indicates the following: "The medical evidence and exam findings from Lifeforce, Akron City Hospital on 06/12/2018, and the allowed condition in the claim, Paraplegia—defined as paralysis of the legs and lower body—supports the request for compensation for the functional loss of use of both his lower extremities."
>
> As previously indicated, relative to the medical term paraplegia, this claim is allowed for "paraplegia, incomplete," and not "paraplegia," with the latter diagnosis leading to the conclusion that [Ottinger] has complete paralysis.
>
> Based on these mistakes of law and fact, the Administrator's order reflects an error of an inferior tribunal.

{¶ 22} We now turn to whether there is some evidence to support the SHO's finding that the bureau's decision contained a clear mistake of fact or law.

### D. Clear Mistake of Fact

{¶ 23} A clear mistake of fact may exist when a clerical error has occurred, *see, e.g.*, *State ex rel. Weimer v. Indus. Comm.*, 62 Ohio St.2d 159, 160, 404 N.E.2d 149 (1980), or when a factual finding is not supported by any evidence in the record,

*see, e.g.*, *State ex rel. Waste Mgt. of Ohio, Inc. v. Indus. Comm.*, 171 Ohio St.3d 68, 2022-Ohio-4581, 215 N.E.3d 512, ¶ 17-19.  A disagreement regarding evidentiary interpretation, on the other hand, is not a proper basis for invoking the commission's continuing jurisdiction.  *See State ex rel. Royal v. Indus. Comm.*, 95 Ohio St.3d 97, 100, 766 N.E.2d 135 (2002).

{¶ 24} Ottinger argues in his second proposition of law that the commission exercised continuing jurisdiction without adequate justification.  He contends that the SHO identified only the possibility of error and that the SHO mischaracterized a disagreement of evidentiary interpretation as a mistake of fact.

{¶ 25} The SHO specified that the bureau erred by basing the award for loss-of-use compensation, at least in part, on documents that incorrectly identified Ottinger's diagnosis as "paraplegia."  The SHO explained that this led to the incorrect assumption that Ottinger's claim was allowed for "paraplegia," which led to the incorrect conclusion that Ottinger was completely paralyzed, rather than having some use of his legs, even though the medical documentation in the claim, beginning with the emergency-department report from the date of injury, includes references to and is consistent with the allowed condition of "paraplegia, incomplete."  Emergency-department physicians assessed Ottinger's injury on the ASIA Impairment Scale as "L1 ASIA B."  In later physical-therapy notes, Ottinger's injury was documented as "L1 AIS C."  Postsurgical notes explain that Ottinger had regained some sensation in his legs as well as limited mobility with the assistance of leg braces and wheeled walkers.  Moreover, it is undisputed that Ottinger was not completely paralyzed as a result of his injury and that when he moved for an award of loss-of-use compensation, he was to some extent ambulatory.

{¶ 26} The inconsistency between the medical documentation, which showed that Ottinger was not completely paralyzed, and the bureau nurse's incorrect description of his allowed condition as "paraplegia" is some evidence that

supports the SHO's determination that the bureau's order awarding Ottinger loss-of-use compensation was based on a mistake of fact. Contrary to Ottinger's position, the SHO did not identify an evidentiary disagreement but instead identified a clear mistake of fact in the bureau nurse's review notes that was used to support the bureau's February 2019 decision to award Ottinger loss-of-use compensation. We therefore conclude that the commission did not abuse its discretion by exercising its continuing jurisdiction to vacate the bureau's order awarding Ottinger loss-of-use compensation based on a clear mistake of fact. *See Neitzelt*, 160 Ohio St.3d 175, 2020-Ohio-1453, 155 N.E.3d 812, at ¶ 23 (we "will not order the commission to vacate its decision if the decision is supported by some evidence").

### E. Clear Mistake of Law

{¶ 27} A clear mistake of law exists when it is "of such character that remedial action would clearly follow." *State ex rel. Rodriguez v. Indus. Comm.*, 67 Ohio St.3d 210, 213, 616 N.E.2d 929 (1993), citing *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 542, 605 N.E.2d 372 (1992) (holding that a clear mistake of law exists when it is clear this court would issue a writ of mandamus).

{¶ 28} Ottinger argues that the commission failed to identify a clear mistake of law and that any subsequent explanation conjectured by the courts on appellate review does not cure the commission's failure to adequately explain its justification for exercising continuing jurisdiction.

{¶ 29} As recognized by the Tenth District, "[a] single mistake of fact or mistake of law is all that is needed to justify the commission's exercise of continuing jurisdiction." 2023-Ohio-1758 at ¶ 19. Therefore, we need not address the remaining arguments under Ottinger's second proposition of law.

### *F. The Commission's Decision to Deny Loss-of-Use Compensation*

**{¶ 30}** After the commission properly exercises its continuing jurisdiction and vacates an order, the commission is required to reexamine all facets of the underlying request for compensation, *State ex rel. Sheppard v. Indus. Comm.*, 139 Ohio St.3d 223, 2014-Ohio-1904, 11 N.E.3d 231, ¶ 24, and is then free to reach a different conclusion regarding any issues of law or fact, *Waste Mgt.*, 171 Ohio St.3d 68, 2022-Ohio-4581, 215 N.E.3d 512, at ¶ 21. *See also* R.C. 4123.52(A) ("the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified").

**{¶ 31}** As stated above, to qualify for loss-of-use compensation under R.C. 4123.57(B), a claimant must demonstrate with medical evidence a total loss of use of a body part for all practical purposes. *Alcoa Bldg. Prods.*, 102 Ohio St.3d 341, 2004-Ohio-3166, 810 N.E.2d 946, at ¶ 12-14. A loss of use must be both permanent and total, to the same effect and extent as if the body part had been physically removed. *Walker*, 58 Ohio St.2d at 403-404, 390 N.E.2d 1190.

**{¶ 32}** In Ottinger's final proposition of law, he argues that the commission abused its discretion by reexamining his motion for loss-of-use compensation and by finding that he had failed to establish a loss of use of both legs under R.C. 4123.57(B). This argument fails, however, because the commission supported its finding with the following evidence:

> The physical therapy notes do document progress relative to [Ottinger's] use and function of his lower extremities. At hearing, [Ottinger] testifie[d] that he is able to use both feet/legs in order to drive a car.[3]  Although he must use a walker during his daily

---

3. Because the transcript of this hearing is not in the record on appeal, we cannot verify Ottinger's testimony in this regard.

activities, and his functioning is limited, he has not established a total loss of use.

The Hearing Officer also relies on the report of Michael Harris, M.D., who conclude[d] that the allowed injuries have not resulted in a total, permanent loss of use of the left and right legs to such a degree that the affected body parts are useless for all practical purposes. Dr. Harris note[d] that [Ottinger] is ambulatory as he ambulates independently with a walker for short distances. Dr. Harris note[d] that [Ottinger] does have an incomplete spinal cord injury and remains quite weak, but he does not have a complete loss of use of his left and right lower extremities.

Accordingly, the commission's denial of Ottinger's motion for loss-of-use compensation is supported by some evidence.

{¶ 33} Ottinger additionally argues that the commission erred in denying his motion for loss-of-use compensation based on evidence that was not in the record—namely, Dr. Harris's IME report—when the bureau initially granted him such an award. However, the existence of a clear mistake of fact allowed the commission to reopen the case, vacate the bureau's order, and reconsider all issues de novo. *See Waste Mgt.*, 171 Ohio St.3d 68, 2022-Ohio-4581, 215 N.E.3d 512, at ¶ 21, citing *Sheppard*, 139 Ohio St.3d 223, 2014-Ohio-1904, 11 N.E.3d 231, at ¶ 24. "The commission may, at any point in the processing of an application for benefits, require the injured worker to submit to a physical examination or may refer a claim for investigation." Ohio Adm.Code 4121-3-09(A)(5). "Since the commission may refer a claimant for examination at any time, the commission may consider the report generated therefrom, regardless of when it is obtained." *State ex rel. Cordray v. Indus. Comm.*, 54 Ohio St.3d 99, 101, 561 N.E.2d 917 (1990) (applying former Ohio Adm.Code 4121-3-09(B)(3), which set forth the same

proposition as Ohio Adm.Code 4121-3-09(A)(5)).  It was therefore within the commission's discretion to consider Dr. Harris's report, even though it was not in the record when the bureau issued its initial decision.  *See id.*

**{¶ 34}** Because the SHO's findings are supported by Dr. Harris's report, we conclude that the commission did not abuse its discretion by denying Ottinger's motion for loss-of-use compensation.  *See Mobley*, 78 Ohio St.3d at 584, 679 N.E.2d 300 (an order based on some evidence will not be disturbed as manifesting an abuse of discretion).

### III. CONCLUSION

**{¶ 35}** For the foregoing reasons, we conclude that Ottinger has failed to establish a clear legal right to the relief requested.  We therefore affirm the Tenth District Court of Appeals' judgment denying Ottinger's request for a writ of mandamus.

Judgment affirmed.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

———————————

Craigg E. Gould, for appellant.

Dave Yost, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee.

———————————